WASHINGTON CONSTRUCTION CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MICHAEL SPINELLA, DEFENDANT-APPELLANT.

Argued November 12, 1951—Decided November 26, 1951.

*Mr. Louis Santorf* argued the cause for appellant.

*Mr. Jack Rinzler* argued the cause for respondent (*Messrs. Feder & Rinzler*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. On petition we granted certification to review a final judgment entered in the Appellate Division affirming a judgment in the Law Division wherein the contractor recovered moneys from the owner under a cost-plus-percentage construction contract entered into by the parties.

In the written contract the respondent is referred to as the contractor and that designation, for the sake of clarity, will be employed here, while the appellant will be termed the owner.

The contractor agreed to erect and finish a building and apartments consisting of 15 units called Building No. 2 on the plans and according to the drawings and specifications of the architect designated in the agreement. He was also obligated to "find and provide such good, proper and sufficient materials of all kinds whatsoever, as shall be proper and sufficient for the completing and finishing all the said apartments and buildings. * * *"

The owner agreed to pay to the contractor "the cost of the erection of said Building No. 2, as the same costs the contractor and to pay in addition to said cost the sum equal to 10% of the aforesaid total cost as the profit to said contractor." A provision for payment at a particular time for

the payroll of all persons actually engaged on the project was not in dispute. The payment for the materials was specified thusly:

"The contractor shall present to the owner on the first day of each month a complete list of all materials furnished in the course of construction on said building for the preceding month. The owner shall thereupon, prior to the 10th of such month, pay to the contractor the total represented by all the bills for the materials furnished, less all discounts allowed to said contractor and less all discounts that said contractor will be entitled to for having said bills paid prior to the 10th of such month."

Paragraph 4 merely provided for the payment of the cost of all insurance carried on the project during the course of construction, while paragraph 5 recited:

"After such building has been completed and a certificate of completion obtained the parties hereto shall compute the total actual cost of said building, whereupon the owner shall pay to the contractor 10% of such total cost to represent their profit in the matter of the construction of the aforesaid."

Paragraph 7 gave the owner the option of obtaining the materials from other sources if he thought he could secure them at a lesser price, after informing the contractor to that effect; while paragraph 9 gave the owner, "should he feel that the prices charged for labor or materials are excessive or that the conduct of any person or persons working under the supervision and direction of said contractor are doing or committing anything that he deems improper," the right to cancel the contract upon notifying the contractor. Then follows the controversial clause:

"If such event takes place the parties hereto shall compute the total cost of construction and labor up to that date, and to pay 10% thereof to the contractor as his profit up to that date."

Invoking the remedies reserved to him, the owner cancelled the contract on November 6, 1947, and paid for the insurance and labor and for all building materials delivered to the site. In computing the contractor's profit, however, the owner

refused to include, as part of the cost basis, the value of materials which were on hand but had not yet been used in the construction of the building, although conceding his obligation to pay for the materials themselves. The contractor brought this action for ten per cent of that value as part of the profit specified in the contract, making the sum in controversy $2,133.93, the figure stipulated by the parties.

The trial court directed a verdict for the contractor against the owner for this amount and the Appellate Division affirmed the judgment so rendered.

The owner is not content and insists the amount due to the contractor is limited to the agreed percentage of the actual cost of labor and materials which went into and became part of the finished product; that the phrase "cost of construction" used in the contract means the cost of labor and materials which have been combined to make the materials a part of the building; and that both courts below erred in construing the contract in the light of the previous conduct of the parties acting pursuant to it.

The first two points are closely interrelated and may best be considered together. The problem presented is the familiar one of ascertaining the intent of the parties by the construction and evaluation of the words they used in expressing the agreement between them.

Proclaiming "there is no decision in this state adjudicating the specific question presented by this point and the question is *res integra* here," the owner seeks shelter in the interpretation given the phrase "cost of construction" in 17 *C. J. S.*, *p.* 826:

> "Under a cost-plus contract the contractor is entitled, as compensation, to the agreed percentage of the actual cost of the labor and materials that go into and become a part of the finished product, within the terms of the contract"

and similar expressions in *Lytle, Campbell & Co., Inc., v. Somers, Fitler & Todd Co.,* 276 *Pa.* 409, 120 *A.* 409, 27

*A. L. R.* 41 (*Sup. Ct. Pa.* 1923), and *House v. Fissell,* 51 *A. 2d* 669 (*Ct. of App. Md.* 1947).

These cases bear on a controversy arising after the building was fully completed and are not applicable, as obviously under such circumstances a contrary answer may well be arrived at, depending on the wording of the instrument.

The gist of the owner's dissatisfaction is that the Appellate Division "substituted the words 'materials furnished for the erection' in place of the words 'cost of construction'" and thus "did not construe the contract of the parties but made a new one for them."

It has been decided many times and in many cases that the court will not make a different or a better contract than the parties themselves have seen fit to enter into. *Herbert L. Farkas Co. v. N. Y. Fire Ins. Co.,* 5 *N. J.* 604 (1950); *James v. Federal Ins. Co.,* 5 *N. J.* 21 (1950); *First National Bank, Fort Lee, v. Burdell,* 121 *N. J. Eq.* 277 (*E. & A.* 1936); *Krieg v. Phoenix Ins. Co.,* 116 *N. J. L.* 467 (*E. & A.* 1936); *Marone v. Hartford Fire Ins. Co.,* 114 *N. J. L.* 295 (*E. & A.* 1934); *Frisbie Throwing Co. v. London Guarantee, &c., Co.,* 105 *N. J. L.* 613 (*E. & A.* 1929); *Kupfersmith v. Delaware Ins. Co.,* 84 *N. J. L.* 271 (*E. & A.* 1912).

We see little merit to the suggestion that the court below substituted another contract in place of the one made by the parties. We find no trespass in this respect, the court seemingly having adhered closely to the rule supported by many authorities and not questioned here that the inquiry is to ascertain and effectuate the intent of the parties.

"Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing and every word of it will, if possible, be given effect * * * a court will endeavor to give a construction most equitable to the parties and which will not give

one of them an unfair or unreasonable advantage over the other."
9 *Williston on Contracts* (*Rev. ed.*), sec. 46, *p.* 64.

██ One of the contractor's responsibilities, specifically stated in the contract, was to "find and provide such good, proper and sufficient materials of all kinds whatsoever, as shall be proper and sufficient for the completing and finishing all the said apartments and buildings." This was an obligation on his part, the performance of which presumably was of some consequence in arriving at the compensation to be paid. His knowledge and ability to comply with it in this period of scarcity and shortage of many basic commodities were not unimportant. The materials on the site of the job were obtained to be used in the construction of the building and admittedly were necessary for the completion of the job. The contractor, having in good faith performed that part of the contract, we find nothing in its terms indicating an intent to penalize and deprive him by cancellation of profits he would otherwise have made.

This clause reflects upon and is to be taken into consideration in determining the amount due. Coupling it with the cancellation clause, "the parties thereto shall compute the total cost of construction and labor up to that date, and to pay 10% thereof to the contractor as his profit up to that date," it is clear that the language used expresses an intent to include in the total cost of production the cost of labor, the materials used in the erection of the building and the materials on the site of the job purchased to be used in and necessary for the erection of the building.

The converse interpretation of the agreement as urged by the owner would permit him, under this clause, to cancel the contract after all the materials required had been assembled at the site but before any construction had actually commenced. Thus he would secure *gratis* the work of a contractor whose knowledge, reputation, contacts, prestige and standing enabled him, despite the recurrent shortages so common in recent years, to find, purchase and have delivered the required supplies where others might fail. In the absence

of a specific expression to that end, it cannot be held that the rendering of such valuable services was intended to be gratuitous.

The owner's contention that the courts below construed the contract with reference to evidence extrinsic to it need not be considered as we arrived at our conclusion independent of the testimony referred to. Nevertheless it is comforting and of interest to note that the parties by their conduct in previous payments interpreted the contract as we have.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.