Juanita STONE, Individually and as Executrix under the last Will and Testament of Oliver H. Stone, Deceased, Appellant,

v.

UNITED STATES of America, and Mary Jane Shackelford, Appellees.

No. 17780.

United States Court of Appeals Fifth Circuit.

Dec. 8, 1959.

Albert W. Copeland, Montgomery, Ala., Godbold, Hobbs & Copeland, Montgomery, Ala., of counsel, for appellant.

M. Roland Nachman, Jr., Hartwell Davis, U. S. Atty., Paul L. Millirons, Asst. U. S. Atty., Montgomery, Ala., Walter J. Knabe, Birmingham, Ala., and Knabe & Machman, Montgomery, Ala., of counsel, for appellee Shackelford.

Before RIVES, Chief Judge, and BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The dispute in this case is between the divorced wife and the widow of an insured veteran. Each asserts the right to the proceeds of a National Service Life Insurance policy in the amount of $10,-000. The question for decision is whether the insured, Oliver Stone, effected a valid change of beneficiary from Mary Jane Shackelford, his divorced wife, to Juanita Stone, his widow, in spite of his failure to notify the Veterans Administration of a change of beneficiary.

Mrs. Stone, individually and as executrix, sued Mrs. Shackelford and the United States of America under the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq.,* and the World War Veterans Act of 1924, as amended, 38 U.S.C.A. § 445.** The district court granted summary judgment for Mrs. Shackelford based on the pleadings, the testimony of Mrs. Stone and her attorney, and the administrative file of the Veterans Administration showing an agency determination in favor of Mrs. Shackelford. Mrs. Stone appeals from the summary judgment. We reverse and remand.

This Court is no stranger to appeals in which we are required to con-

---

* Now 38 U.S.C.A. § 701 et seq.

** Now 38 U.S.C.A. § 784(a–h).

sider whether a change in beneficiary is effective that does not comply with the terms of a National Service Life Insurance policy.[1] The legal principles furnishing the basis for these holdings are relatively simple and well settled. The cases are unanimous in the view that courts will brush aside legal technicalities in order to effectuate the manifest intent of the insured. Mere intent however is not enough: there must be some affirmative act on the part of the insured evidencing an exercise of the right to change the beneficiary. Ferguson v. Knight, 5 Cir., 1959, 264 F.2d 176. The difficulty comes in determining the kind and degree of affirmative action necessary to effect a change. As stated in Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758, 760, 2 A.L.R.2d 484:

"The cases are also unanimous that a mere intent to change a beneficiary is not enough. Such an intent must be followed by some affirmative act on the part of the insured evidencing an exercise of the right to change the beneficiary. Where the courts differ is as to the degree of affirmative action necessary to effect a change. Literal compliance with the provisions of a policy is never necessary."

Again in the Mitchell opinion this Court said:

"These insurance cases are difficult of decision. Each must be decided in the light of its own facts. * * * It is said that a combination of intent and act is required, but to say in these insurance cases that though intention to change the beneficiary is proved to the hilt, no effective formal act having been done no change can be held to have been made, is not to brush technicalities very far."

In the instant case the district court found that "the most favorable inference in support of [appellant's] position * * * is that the insured thought his National Service Life Insurance was payable to his estate"; but "mistaken belief, without more, is not sufficient". The appellant contends that in a record clearly showing intent to change the beneficiary, a property division agreement at the time of the divorce, decedent's probated will, and his suicide note furnished proof of affirmative action. The effect of these matters must be considered cumulatively and in the light of the record as a whole.

In 1942 the veteran was issued a National Service Life Insurance policy for $10,000 on the level premium term plan. The insurance lapsed for non-payment of premiums. In 1950, the insurance was reinstated on the five-year level premium plan. This insurance policy lapsed for non-payment of premiums due May 1, 1954, August 1, 1955, and November 1, 1955, but each time was reinstated. The policy was in force on November 15, 1957 when the insured committed suicide.

There were numerous changes of beneficiary. On the original application the insured designated Mary Shackelford Stone, then his wife, now the defendant Mary Jane Shackelford, as the principal beneficiary and Oliver Hardie Stone, Jr., his son by another marriage, as the contingent beneficiary. The division of the $10,000 between Mary Shackelford Stone and Oliver Hardie Stone, Jr. was changed by the insured on January 28, 1947, and again on February 7, 1949. On September 15, 1950 the veteran designated his wife as the sole beneficiary. On January 27, 1954 the veteran designated his son as the sole beneficiary. On March 9, 1954 the veteran changed the beneficiary back to Mary Shackelford Stone. This is the last designation of beneficiary on record.

1. Ferguson v. Knight, 5 Cir., 1959, 264 F.2d 176; O'Brien v. Elder, 5 Cir., 1957, 250, F.2d 275; Kell v. United States, 5 Cir., 1953, 202 F.2d 143; Watson v. United States, 5 Cir., 1950, 185 F.2d 292; Bowens v. United States, 5 Cir., 1950, 184 F.2d 730; Butler v. Butler, 5 Cir., 1949, 177 F.2d 471; Hester v. Hester, 5 Cir., 1948, 171 F.2d 477. Cf. Gann v. Meek, 5 Cir., 1948, 165 F.2d 857; McKewen v. McKewen, 5 Cir., 1948, 165 F.2d 761; Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758, 2 A.L.R.2d 484.

These changes in beneficiary were accomplished by execution of appropriate VA forms.

The changes in the designation of beneficiary coincided with changes in the decedent's will. They reflected the state of harmony or discord prevailing in the Stones' marital strife. Oliver Stone and Mary Jane Shackelford were married fifteen years. In January, 1954 she filed suit for divorce. January 27, 1954 the veteran named his son as sole beneficiary. Before the divorce suit was tried, a reconciliation took place and the divorce suit was dismissed. The veteran then again designated his wife as beneficiary. The reconciliation was short-lived. In the summer or fall of 1955 Mr. and Mrs. Stone went to the office of H. T. Fitzpatrick, Jr., an attorney, to discuss divorce proceedings. Mr. Fitzpatrick had represented the veteran since 1949 in a number of mortgage matters, in the preparation of four or five wills, and in the 1954 divorce proceedings.

In a deposition Mr. Fitzpatrick stated that the parties advised him that they "had both worked out the main essence of their divorce agreement between themselves". Mrs. Shackelford had prepared and presented to Mr. Fitzpatrick a detailed list of personal property which she was to receive in addition to a cash settlement of $8,000. At this conference and in later conferences there was no specific discussion of insurance. Mr. Fitzpatrick testified, however, that he "discussed both with her and with him that anything not named on this list in his (her) name would belong to him". The inventory of items which Mrs. Shackelford was to receive did not include any insurance. There was a delay in order to allow Mr. Stone to sell part of his real estate to raise the $8,000 needed for the cash settlement.

The divorce decree incorporated the settlement agreement of the parties. Paragraph 4 of the agreement provides:

"In consideration of the payment of said sum of $8,000.00 and of the transfer of said personal property, first party [appellee Shackelford] waives all further rights to alimony or support and maintenance by second party [Mr. Stone] and waives all of her right, title and interest, if any, in and to the property of second party."

The divorce negotiations were "bitter and filled with animosity", according to the appellant. Mrs. Shackelford and Mr. Stone bickered over the divorce and the settlement provisions. The list of items to go to Mrs. Shackelford was fought over down to "whether she was to take all the flowers and trellises in the yard". Mr. Stone told the appellant and others that he "would rather cut off his right arm" than pay Mrs. Shackelford the $8,000 settlement. The bitterness continued after Mr. Stone's marriage to appellant; Mrs. Stone said that Mrs. Shackelford would telephone, then talk to her in vulgar terms.

On January 21, 1956 Mr. Stone married the appellant. In March Mr. Stone had Mr. Fitzpatrick prepare a new will. In this will Mrs. Juanita Stone was the sole beneficiary, except for a cash bequest of $2,000 to an old servant. Mr. Fitzpatrick testified that he inquired as to the insurance particularly because he was concerned as to how this cash bequest would be paid.[2] Mr. Stone told Mr. Fitzpatrick on this occasion and on several other occasions that the insurance was payable to his estate. Mrs. Juanita Stone testified that her husband informed her that the policy was payable to the estate. Several times he made an equivalent statement in the presence of friends. An affidavit of Mr. Fitzpatrick states, in part: "I know of my own knowledge that it was not Oliver

---

2. Mr. Fitzpatrick testified that the insured increased the cash bequest on the assumption that the proceeds of the policy would go to his estate. Without the proceeds, the estate did not contain sufficient funds to cover the cash bequest.

H. Stone's intention that his former wife receive the proceeds of his National Service Life Insurance policy, but that he intended the same to be payable to his estate, and to be controlled by the provisions of his last will and testament."

In December, 1956 Mr. Stone attempted to kill himself. At that time he left a note to his wife, Juanita Stone, reading:

"Baby: You have been a sweet, considerate and lovable wife. What has happened has been building up for sometime. Please take care of what little I leave you and for you alone. My will and insurance policies are in the steel box in the den. See Tom Fitzpatrick, Jr., for legal matters and Jim Flowers for sound advice. Be considerate of Matt, he will always help you. Bye, Papa [Over] Graveside funeral and request no flowers."

About one year later Mr. Stone did commit suicide. No note was found.

This Court has recently considered the effect of a settlement agreement on insurance policies designating a divorced wife as beneficiary. In O'Brien v. Elder, 5 Cir., 1957, 250 F.2d 275 the insured and his wife were divorced three months before the insured's accidental death. One of the policies was a National Service Life Insurance contract. The Florida probate court ordered the policies delivered to the former wife and the Veterans Administration determined that the former wife was the beneficiary under the National Service Life Insurance policy. This Court reversed, not on the ground that the agreement effected a change of beneficiary but on the ground that the settlement agreement operated as a relinquishment of the divorced wife's rights under the insurance contracts, although in Florida the law is plain that such rights must be character-

ized only as an expectancy.[3] The O'Brien agreement was very similar to the Stone agreement. In the O'Brien case the parties stipulated that neither "shall have any claim on the other party of any kind whatsoever, including that for alimony" [250 F.2d 279]. In this case Mrs. Shackelford "waives all further rights to alimony or support and maintenance" and "waives all of her right, title and interest, if any, in and to the property of second party". The line is fine indeed between (1) "any claim" and (2) "all of her right, title and interest, if any, in and to the property" of her husband. In O'Brien this Court read the agreement as expressing "the intention by each party to release and relinquish any and all interests", treating "interest" and "claim" as equivalents. In both cases the agreements were meant to accomplish the same object: to wipe the slate clean between the parties.

As we see it, however, it is not necessary to decide that Mrs. Shackelford's interest, though only an expectancy, is an "interest" subsumed under the release in the agreement.[4] In line with our previous decisions, technical precision in these matters is not required. Under those decisions, it would be sufficient to establish (1) that Mr. Stone entered into the settlement agreement with the intention that it would operate to terminate Mrs. Shackelford's status as beneficiary under this policy, (2) that upon the execution of the agreement Mr. Stone believed that Mrs. Shackelford's status as beneficiary had in fact been terminated, and (3) that Mr. Stone's belief in this regard was a reasonable one. The first two of these three elements are pure questions of fact upon which Mrs. Stone has offered direct evidence which, if credited by a jury, would justify determinations on those issues in her favor. The third

---

3. Alabama law is the same. Merchants' National Bank of Mobile v. Hubbard, 1929, 220 Ala. 372, 125 So. 335.

4. In United States v. Pahmer, 2 Cir., 1956, 238 F.2d 431, the insured left a last will written immediately before his suicide. The instrument failed as a will.

In it, however, the insured directed that his mother receive his NSLI benefits rather than his wife whom he had previously designated to the Veterans' Administration. The Second Circuit reversed an award in favor of the wife on the basis of the will operating as an affirmative act.

element involves a mixed question of law and fact and it is that element which the district judge ruled was lacking in this case as a matter of law.

In this Court's recent decision in Hawkins v. Hawkins, 5 Cir., 1959, 271 F.2d 870 it was held that where the veteran had divorced the designated beneficiary on grounds of adultery, it could not be said as a matter of law that a subsequent belief that such divorce operated to change the beneficiary of an NSLI policy would be unreasonable. There, as here, the Court was confronted with evidence which, if credited, would tend to establish in a convincing manner that the veteran intended to change the beneficiary of his policy and thought that he had done so. We held: "[T]he jury can evaluate the fact of a divorce coupled with the peculiar circumstances surrounding it in order to determine whether the serviceman has done all that he thinks is reasonably necessary to accomplish a change."

■ The settlement agreement, though perhaps not sufficient to constitute a relinquishment of Mrs. Shackelford's beneficiary status under the law of Alabama, is an affirmative act by the insured indicative of his intent to cut his former wife out of the insurance and any other property not listed in the agreement as belonging to her. There is other evidence.

■ There is substantial evidence that Mr. Stone believed that his insurance was payable to his estate. This may have been a mistaken belief, but the act of remaking his will in favor of Juanita Stone on the assumption that the insurance was payable to his estate was an affirmative act on his part to see that his widow received his insurance, not his estranged ex-wife.[5]

The suicide note contains an express reference to the insurance. In this note Stone stated that what little he had was for his widow "alone". In the next sentence he informed her where to find the insurance policy. Here again we are not concerned with the legal effect of the writing, but the writing is an affirmative act extending beyond a mere intent.

■ Summarizing, (1) there is substantial evidence of the insured's continuing intention to change the beneficiary, (2) undisputed evidence of his belief that he had changed the beneficiary, and (3) strong evidence that the natural object of his bounty was his widow, not his estranged and bitter former wife. Because of these and similar circumstances which reduce the possibility of fraud and the danger of a miscarriage of justice, courts have allowed claimants in this type of case some latitude in attempting to prove their claims.[6] We hold therefore that considering the settlement agreement, the will, the suicide note, and the record as a whole there is sufficient evidence supporting the appellant's contentions to raise a genuine issue of fact for the jury to decide.

We recognize that Mrs. Shackelford was not an unnatural object of Stone's bounty. She lived and worked with Oliver Stone for fifteen years. She too contributed to building and preserving whatever estate he had—with no more than an expectancy as her award. Perhaps a jury, on the same record, might decide exactly as the trial judge decided. We believe, however, that it is in the interest of justice that this case be decided by a jury after a full trial rather than by the district judge on a motion for summary judgment.

The judgment is reversed and remanded.

---

5. In Butler v. Butler, 5 Cir., 1949, 177 F. 2d 471, 472, holding that the insured had not effectively changed the beneficiary, this Court said: "It is evident that the insured knew who was named as beneficiary in his policies and failed to make any change therein."

6. See cases collected in Annotation, 2 A.L.R.2d 484.