590 A.2d 1161

EDGARDO VASCONI, ADMINISTRATOR OF THE ESTATE OF ROBERT VASCONI, PLAINTIFF–APPELLANT, v. THE GUARD-IAN LIFE INSURANCE COMPANY OF AMERICA, DEFEN-DANT AND THIRD–PARTY PLAINTIFF, v. LEAH (VASCONI) WOLF, THIRD–PARTY DEFENDANT–RESPONDENT.

Argued November 26, 1990—Decided June 3, 1991.

*Ronald M. Abramson* argued the cause for appellant (*Kleeblatt, Galler & Abramson,* attorneys).

*George T. Imperial* argued the cause for respondent (*Horowitz and Imperial,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

Over the past twenty years, one of the most consistent statistics in America has been the rising divorce rate. In turn, a sad, but familiar, scenario has arisen. Following a bitter divorce, a settlement agreement divides the marital property, with a life insurance policy being awarded to the insured. The policy, however, names the ex-spouse as beneficiary. The insured then remarries, but dies unexpectedly without completing the necessary procedures for changing beneficiaries. The insured's estate claims the policy proceeds. Despite the

change of conditions since initiation of the policy, the insurance proceeds are awarded to the ex-spouse. Many states' laws compel just such an inequitable result. [Note, *Life Insurance Beneficiaries and Divorce*, 65 *Tex.L.Rev.* 635, 635 (1987) (footnote omitted).]

In this case, the scenario is somewhat different: the policy is a group policy; the insured never remarried; and the former spouses never made specific reference to the insurance policy in their property-settlement agreement, although they did waive generally all interest in each other's estate in the event of death. The issue, however, is essentially the same: whether New Jersey compels an inequitable result that the divorced decedent would have never intended. We think not, and therefore reverse the judgments below, which award the insurance proceeds to the former wife, and remand for a factual hearing on whether the plain meaning of the property-settlement agreement and the probable intent of the decedent are overcome by other evidence of the decedent's intent toward his former wife.

# I

Because the case proceeds on summary judgment, we may accept the facts set forth in plaintiff's brief. Robert Vasconi married Leah (Vasconi) Wolf on September 9, 1982. Almost two years later, on August 24, 1984, Robert designated Leah as the beneficiary of his group life-insurance policy maintained by Oakland Auto Parts, Inc., a business of which he was the vice-president, according to the terms of the application. The Guardian Life Insurance Company of America (Guardian) issued the policy.

The record does not disclose the circumstances of that beneficiary designation, although at oral argument we were informed that the marriage was then already on troubled times. Robert's father, Edgardo, states in an affidavit that "[d]uring their short-lived marriage, [Robert] suffered and endured nothing but animosity, discord, friction and hostility." Despite that, Robert had designated Leah as the beneficiary of the group life-insurance policy. Less than a year later, their marriage

was over. The parties executed a property-settlement agreement on May 6, 1985, and obtained a judgment of divorce on the same date. The property-settlement agreement provided for a mutual waiver of alimony and a mutual waiver of all claims or obligations either may have had to the other arising out of the marital relationship. It provided, as well, for the relinquishment of all claims either may have had in the estate of the other party on the latter's death. According to the agreement, those claims were relinquished "whether by way of statutory allowance, distribution of intestacy, or election or take against the other party's will." A separate schedule attached to the agreement distributed certain personal property, specifically awarding to the husband "any personal possessions presently in his custody and control, pension or profit-sharing benefits, bank accounts, stocks, bonds, jewelry, furniture, cash *and any other such property*" (emphasis added). In addition, the schedule provided that "[a]ny and all other personal property not mentioned in this Agreement which is presently in the possession, ownership, or name of the respective parties as of the date hereof, will remain in their individual possession and ownership."

Robert died at age thirty-three on December 28, 1986. His father qualified as the administrator of his estate. As administrator he sought payment of the policy proceeds from Guardian, asserting that Leah had relinquished her interest in the proceeds of the policy as well as in all of Robert's assets. He further alleged that the degeneration of Robert's and Leah's relationship had induced alcoholism in Robert and that Robert had died of liver failure caused by his alcoholic condition. He sought to prove that Robert had intended to remove Leah as the beneficiary of the policy but had been unable to "perform the ministerial act" due to his severe alcoholic condition. He also asserted that Robert had believed that the terms of the property settlement effectively revoked Leah's status as beneficiary. He pointed to the fact that Leah had not filed a proof of claim for the life-insurance proceeds until February 1989, more

than two years after Robert's death, suggesting that Robert had never discussed the policy with her or informed her that she was the beneficiary.

The Law Division granted summary judgment to Leah on the basis that

[t]here does exist in New Jersey an unbroken line of cases holding that the interest of a designated beneficiary of a life insurance policy is a vested property right payable in the event the beneficiary outlives the insured, subject to divestment only by the insured making a change of beneficiary in the manner provided by the policy contract. A demonstrated intention to change beneficiaries is insufficient if not executed in the manner prescribed in the policy for effecting such a change. Change in the marital relationship between insured and beneficiary has been held insufficient even when accompanied by a separation agreement executed by the first wife and named beneficiary in which she purported to release her husband, the insured, from any claim against him or his estate. [Citations omitted.]

The Appellate Division granted Edgardo's motion for an emergency stay of the judgment, but subsequently affirmed the judgment of the Law Division in an unreported opinion. The court stated that "[w]ell established law dictates that unless the owner of the policy has changed the beneficiary in the manner provided by the policy, the insurer is obligated to pay the proceeds to the named beneficiary." Guardian did not participate in the appeal, having paid the proceeds into court.

We granted Edgardo's petition for certification. 122 *N.J.* 128, 584 *A.*2d 204 (1990).

## II

For many couples, life insurance is, apart from their home, the largest single estate-planning device that they possess. "Because of a recognition of life insurance as a major estate planning device, in the last ten years investments in life insurance have increased from one and one-half trillion dollars to four and one-half trillion dollars." Note, *Life Insurance Beneficiaries and Divorce, supra,* 65 *Tex.L.Rev.* at 635 (footnotes omitted). To place that figure in perspective, we note simply that the proposed annual budget of the United States is nearly

one and one-half trillion dollars. Our national debt is now some three trillion dollars. The reasons for the popularity of life insurance are well known. Life insurance "shelters the insured from income taxes during his life, provides an immediate source of funds to meet taxes and expenses of the estate upon death, keeps the insurance proceeds out of the insured's estate, and avoids [some local] estate taxes in the process." *Ibid.* (footnote omitted). Life insurance rivals the will, then, as the principal modern means of transferring assets to the decedent's estate.

Hence, an examination of how the law of wills would have handled this situation had it been Robert's will that had transferred the proceeds to Leah will aid our analysis. Only gradually has the law of wills recognized that divorce should revoke a will. "At common law, two changes in circumstances revoked a testator's will by implication. For a female, marriage after the creation of a will * * * revoked the will. For a male, marriage and birth of issue after the creation of a will served to revoke the will." Note, *Applying the Doctrine of Revocation by Divorce to Life Insurance Policies,* 73 *Cornell L.Rev.* 653, 655 (1988) (footnotes omitted) (suggesting as well that doctrine of revocation by divorce should apply to beneficiary designated in life-insurance policy) (hereinafter Note, *Revocation by Divorce* ). Originally the doctrine of revocation by implication was rebuttable, but courts later "transformed the doctrine into an irrebuttable rule of law by stressing the moral obligations that marriage and birth of issue imposed upon the testator." *Id.* at 655 n. 11. Some courts, however, "refused to extend revocation by implication to divorce, limiting the doctrine to its common law applications." *Id.* at 658 (footnote omitted). That was the law in New Jersey until 1978 when the Legislature enacted *N.J.S.A.* 3A:2A–13 (current version at *N.J.S.A.* 3B:3–14). At that time, New Jersey joined the overwhelming number of states that have enacted statutes recognizing revocation by divorce. Those statutes adopt the presumption that "in the vast majority of cases the testator's failure to revoke his will subsequent to a divorce is due to neglect, and that to find an

implied revocation usually gives effect to a testator's real intentions." Note, *Implied Revocation of Wills After Divorce and Property Settlement*, 4 *Duke B.J.* 122, 126 (1954) (hereinafter Note, *Implied Revocation* ).

The transfer of proceeds under an insurance policy is, after all, in almost all respects, similar to the transfer of assets under a will: the transfer is accomplished by a written declaration of the property owner; it is ambulatory (that is, it ambles along during life and can usually be changed at any time); it takes effect on death; and the property with which it deals is included in the decedent's federal taxable estate. The primary difference is that we call it a nonprobate asset.

Just why a nonprobate asset should be treated differently from a probate asset does not yield a satisfying answer. The various legal techniques employed to achieve the distinction, see, for example, *Gerhard v. Travelers Insurance Co.*, 107 *N.J.Super.* 414, 423, 258 *A.*2d 724 (Ch.Div.1969) (beneficiary of policy "has a vested right to insurance proceeds, subject to divestment according to the terms of the policy"), appear to have focused on enabling nonprobate transfers of property to achieve will-like results without the formality of wills, with unintended consequences.[1] Would it not be anomalous in the extreme that the device chosen to give the insurance transfer the efficacy of a will serve to bring about a different post-divorce result in the case of the will substitute than the will itself?

---

[1] *See* Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 *Harv.L.Rev.* 1108 (1984). The author suggests that courts have fashioned well-intended rules, like the "vested interest" rule, to avoid probate requirements and to allow property to pass outside of a decedent's will. But "[t]he odor of legal fiction hangs heavily over the [vested interest] test. We see courts straining to reach right results for wrong reasons and insisting that will-like transfers possess gift-like incidents." *Id.* at 1128. The author reasons that courts sympathize with people who want to avoid probate, and asks, "Why must they couch their support in fiction? Why insist on finding a [vested interest] that is lacking? Why deny the will-like nature of the will substitutes?" *Id.* at 1129.

No sound reason in policy can be suggested for the different treatment:

> In other contexts, courts and legislatures have recognized the functional similarities of wills and life insurance policies and have accorded them the same treatment. Courts now categorize life insurance as a substantial asset in property divisions resulting from divorce. For example, recent decisions have awarded insurance benefits to the non-purchasing spouse as part of a property settlement, child support, or alimony decree. In addition, the Internal Revenue Code acknowledges the will-like quality of life insurance by including the life insurance assets payable to third parties in the decedent's gross estate. These examples demonstrate that insurance assets, like probate assets, are in fact assets of the insured's. They are not the beneficiary's assets because the insured retains the power to eliminate completely the beneficiary's interest. [Note, *Uniform Probate Code Section 2-202: A Proposal to Include Life Insurance Assets Within the Augmented Estate*, 74 *Cornell L.Rev.* 511, 525 (1989) (footnotes omitted).]

*See also* Note, *Revocation by Divorce, supra*, 73 *Cornell L.Rev.* at 675–76 (both courts and legislatures should abandon formalistic distinctions between wills and life-insurance policies and apply revocation-by-divorce statutes to both equally).

Is not our intuition and common experience the same? If " '[d]ivorce usually represents a stormy parting, where the last thing one of the parties wishes is to have an earlier will carried out giving everything to a former spouse,' " why should it be thought that insurance proceeds are different? Note, *Revocation by Divorce, supra*, 73 *Cornell L.Rev.* at 653–54 (quoting Young, *Probate Change*, 20 *Boston B.J.* 6, 10 (Dec. 1976)). Is it not equally true that "in the vast majority of cases the [property owner's] failure to revoke his will [or will substitute] subsequent to a divorce is due to neglect, and that to find an implied revocation usually gives effect to [the owner's] real intentions"? Note, *Implied Revocation, supra*, 4 *Duke B.J.* at 126. The truth is that although the reality of human experience is the same,

> legal doctrine has not caught up with this great transformation in the practice of succession. Courts have dressed up the will substitutes as lifetime transfers in order to avoid conflict with the probate monopoly theory of wealth transmission on death. This theory is fundamentally mistaken and should be discarded. The law would function better if it admitted that will substitutes are simply "nonprobate wills." [Langbein, *supra*, 97 *Harv.L.Rev.* at 1140–41.]

## III

We need not decide the broader question today. Suffice it to observe that when spouses divorce and enter into a property-settlement agreement that purports to settle "all questions pertaining to their respective interests in distribution of the marital assets," the proceeds of a life-insurance policy subject to the lifetime control of one spouse should ordinarily be considered as encompassed within the terms of the settlement agreement. Such a settlement agreement and waiver of interest in the property of the deceased spouse should be regarded as presumptively revoking the nonprobate transfer of the insurance proceeds. In *Stone v. United States,* 272 *F.*2d 746, 750 (5th Cir.1959), Judge Wisdom posed the simple but conclusive question: was the settlement agreement between the spouses meant "to wipe the slate clean between the parties"? If so, it should be given that effect.

Although contrary precedent exists, see Jones, *The Effects of Divorce on Life Insurance,* 2 *Probate and Property* 37 (Sept./Oct. 1988), we believe that in the context of a divorce agreement providing a mutual release of "any claim or right" concerning "all of the items of property, real, personal, and mixed, of any kind, nature or description" of the other spouse, the better precedent states that such a comprehensive agreement is presumably intended to settle all issues, including beneficiary designations, over each other's property. *Life Ins. Co. of N. Am. v. Cassidy,* 35 *Cal.*3d 599, 676 *P.*2d 1050, 200 *Cal.Rptr.* 28 (1984).

Life insurance is often used to secure the continued payment of alimony in the event of death. *O'Donnell v. O'Donnell,* 412 *N.W.*2d 394, 398 (Minn.Ct.App.1987); *Davis v. Davis,* 184 *N.J. Super.* 430, 436, 446 *A.*2d 540 (App.Div.1982). Family-law practice manuals counsel lawyers on the proper forms to use to provide for the disposition or continued maintenance of insurance policies in the event of divorce. Practicing Law Institute, *Life Insurance and Estate Considerations: Forms and Com-*

*ments, Tax Law and Estate Planning Course Handbook Series* (1989). Obviously, what can be ordered, as in *Davis, supra,* can be waived.

Because this case arises on summary judgment, we *must* assume all the facts that demonstrate the inequity claimed by the husband's representative: that the divorcing parties intended to "wipe the slate clean," *Stone, supra,* 272 *F.*2d at 750, and that neither party should have any interest in the property of the other, including insurance proceeds.

If this is the assumed state of facts, there is no reason why relinquishment in terms of "any claim on the other party of any kind whatsoever" should not ordinarily be interpreted to include the life-insurance policies over which the other spouse retained the power to change the beneficiary. *O'Brien v. Elder,* 250 *F.*2d 275, 279 (5th Cir.1957) (emphasis omitted). There is no reason why an insurance-beneficiary designation should be sacrosanct at least between the competing beneficiaries. As we have explained, this body of law arose in an entirely different context and for the purpose of effectuating, not invalidating, the intention of the parties. A beneficiary designation must yield to the provisions of a separation agreement expressing an intent contrary to the policy provision. *Novern v. John Hancock Mut. Life Ins. Co.,* 107 *N.J.Super.* 570, 578, 259 *A.*2d 504 (Law Div.1969); *Duhame v. Duhame,* 154 *Wis.*2d 258, 453 *N.W.*2d 149 (Ct.App.1989).

In *Carr v. Carr,* 120 *N.J.* 336, 576 *A.*2d 872 (1990), we noted the confluence in policy between principles of probate law and family law and ruled that the familiar principles of the constructive trust should " 'be impressed in any [marital-separation] case where to fail to do so will result in an unjust enrichment.' " *Id.* at 352, 576 *A.*2d 872 (quoting *D'Ippolito v. Castoro,* 51 *N.J.* 584, 588, 242 *A.*2d 617 (1968)). In the procedural posture of this case we must assume that it would be unfair and unjust for the former wife to retain this property. The only question is whether the law is powerless to remedy

the injustice. We hold that the law is fully capable of effectu- ating marital distributions "derived from notions of fairness, common decency, and good faith." *Carr v. Carr, supra,* 120 *N.J.* at 349, 576 *A.*2d 872.

Our dissenting members resist this ruling, not because they think it unjust or counterintuitive, but because they believe that the existing rule will be more cost-effective and lead to more predictable results. That would be equally true of any unjust rule of law that is settled. Besides, we do not anticipate a flood of litigation. Any matrimonial lawyer may add an extra provision to the agreement to cover this issue. Nevertheless, our dissenting members insist that our ruling will complicate what they regard as the simple business rule that a change of insurance-beneficiary designation can be accomplished in only one way and that is by filling in the correct forms. Any other holding, they say, would lead to confusion and uncertainty for the insurance industry. But we already know that insurers must comply with court orders to insureds to change beneficiaries. *Davis, supra,* 184 *N.J.Super.* at 436, 446 *A.*2d 540. That does not seem to have burdened the industry.

Nor need insurers be concerned that the rule we make today will place an undue burden on them that will result in "confusion and needless delay" in the payment of insurance proceeds. *Strohsahl v. Equitable Life Assurance Soc'y,* 71 *N.J.Super.* 300, 305, 176 *A.*2d 814 (Ch.Div.1962). Insurers will not be responsible for following the personal relationships of the people they insure. *N.J.S.A.* 17B:24–5 fully protects the insurer when it pays the policy proceeds to the named beneficiary. *See. Hirsch v. Travelers Ins. Co.,* 153 *N.J.Super.* 545, 549, 380 *A.*2d 715 (App.Div.1977) ("[i]f payments have been made in accordance [with the policy's beneficiary designation], the [insurance] companies are absolved from further liability"). In the event of a post-payment dispute, the insurer will simply not be involved, having properly executed its duty under the policy to pay the named beneficiary. Moreover, as the circumstances of this case indicate, if notified of any dispute before payment, the

insurer may avoid involvement by paying the proceeds into court.

We recognize that despite the generality of experience, some couples share a lingering affection even after divorce. In that and other circumstances the surviving divorced spouse may overcome the presumption of revocation by establishing to the satisfaction of the court that the parties' intention was to distribute this insurance asset differently from the other assets within the estate. Hence, on remand, the court should focus on the mutual intent of the parties in an effort to determine whether the property-settlement agreement was intended to encompass life insurance. Any inequities occasioned by the non-disclosure of the insurance asset in the marital settlement may be remedied by the familiar principles of matrimonial law. *Rosen v. Rosen*, 225 *N.J.Super.* 33, 37, 541 *A.*2d 716 (App.Div. 1988) ("where there is a showing of fraud or misconduct by a spouse in failing to disclose the true worth of his or her assets, relief may be granted"), *certif. denied*, 111 *N.J.* 649, 546 *A.*2d 558 (1988); *see also Carr v. Carr*, *supra*, 120 *N.J.* at 351, 576 *A.*2d 872 ("courts' equitable powers are particularly appropriate in the context of domestic relations").

In this case, Edgardo Vasconi sought to establish that the parties did not intend to leave the life-insurance policy proceeds to Leah after the divorce. Leah may convince the court otherwise. We leave the parties to their proofs and the sound counsel of their attorneys concerning the resolution of that issue on remand.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for further proceedings in accordance with this opinion. While the issue is not before us, this matter may properly belong in the Family Part of the Chancery Division. See *R.* 5:1-2 (civil actions arising out of a "family or family-type relationship" shall be brought in the Family Part).

POLLOCK, J., dissenting.

Until today an insured could change the beneficiary on an insurance policy only by notifying the insurer in accordance with the policy or by substantially complying with policy provisions. The majority rejects that rule. It holds that after the death of a divorced insured, the named beneficiary, his former wife, may be deprived of the insurance proceeds because her lawyer did not specifically protect her in their property settlement agreement. I would leave so drastic a change to the Legislature. The rule accomplishes little except to engender uncertainty and spawn litigation. Consequently, I dissent.

–I–

Edgardo Vasconi, administrator of the Estate of Robert Vasconi, the insured, sues to obtain the proceeds of a life insurance policy made payable to the insured's former wife, Leah Wolf. Robert married Leah on September 9, 1982. On August 24, 1984, Robert designated Leah as the beneficiary of a $20,000 group policy issued by the insurer, The Guardian Life Insurance Company of America. The policy expressly provided that the insured could change the beneficiary only by notifying the insurer. When Robert designated Leah as his beneficiary, the couple was already experiencing marital problems. On May 6, 1985, Robert and Leah signed a property settlement agreement and were divorced. In the agreement, they released all claims to share "in the estate of the other party upon the latter's death." Although they also waived any claims against each other's property, the agreement did not specifically mention life insurance. Robert knew that the agreement did not affect the beneficiary designation. According to the administrator, Robert told him on several occasions that he proposed to change the designation. With knowledge of the policy provisions, Robert neither notified nor attempted to notify the insurer of that proposal. On December 28, 1986, nineteen months after his divorce from Leah, Robert died of liver failure, apparently due

to alcoholism. He had never changed the beneficiary designation.

On January 23, 1989, the administrator instituted this action, claiming that Robert had meant to change the designation. Leah filed a proof of claim and counterclaimed.

The Law Division granted Leah's motion for summary judgment. In an unreported decision, the Appellate Division affirmed, holding that "[w]ell established law dictates that unless the owner of the policy has changed the beneficiary in the manner provided by the policy, the insurer is obligated to pay the proceeds to the named beneficiary."

–II–

Basically, a life insurance policy is a contract between the insurer and the insured for the benefit of the beneficiary. W. Jaeger, 7 *Williston on Contracts* § 901B at 130–31 (3rd ed. 1963) (*Williston*). In this State, the beneficiary of a life insurance policy has a vested interest in the proceeds subject to divestment according to the terms of the policy. *Gerhard v. Travelers Ins. Co.*, 107 *N.J.Super.* 414, 424, 258 *A.*2d 724 (Ch.Div.1969); *John Hancock Mut. Life Ins. Co. v. Heidrick*, 135 *N.J.Eq.* 326, 328, 38 *A.*2d 442 (Ch.Div.1944). The underlying theory is that the beneficiary-designation is part of the contract between the insured and the company and can be changed only by complying with that contract. Although insurance policies may vary concerning the procedures for changing a beneficiary, many policies, like the one at issue, require that the insured notify the insurer of the change. See *Williston*, *supra*, § 916 at 478–79. An insured, moreover, may effect a change of beneficiary by substantial compliance with the policy. *Haynes v. Metropolitan Life Ins. Co.*, 166 *N.J.Super.* 308, 399 *A.*2d 1010 (App.Div.1979); *Novern v. John Hancock Mut. Life Ins. Co.*, 107 *N.J.Super.* 570, 579, 259 *A.*2d 504 (Law Div.1969). To comply substantially, an insured must make "every reasonable effort to comply" with the policy. *Haynes*, *supra*, 166

*N.J.Super.* at 313, 399 *A.*2d 1010; *Novern, supra,* 107 *N.J.Super.* at 579, 259 *A.*2d 504.

Most jurisdictions, including New Jersey, have long held that divorce alone will not divest a former spouse's beneficiary of his or her interest in the proceeds of the policy. *Gerhard, supra,* 107 *N.J.Super.* at 423, 258 *A.*2d 724; 2 J. Appleman, *Insurance Law and Practice* § 804 at 250 (1941). Some courts have carved out a narrow exception for a former spouse to waive that interest through a separation agreement that specifically encompasses the proceeds. 4 *Couch on Insurance* 2d § 29.4 at 243 (1960) (*Couch*); *see Mullenax v. National Reserve Life Ins. Co.,* 29 *Colo.App.* 418, 424, 485 *P.*2d 137, 139–40 (1971). Unless the agreement demonstrates that the parties clearly contemplated a waiver, however, a general waiver of any interest in the property of the other spouse does not destroy a beneficiary's right to life insurance proceeds. *Mullenax, supra,* 29 *Col.App.* at 424, 485 *P.*2d at 139–40; *Standard Life Ins. Co. v. Franks,* 278 *So.*2d 112, 114 (La.1973); *Gerhard, supra,* 107 *N.J.Super.* at 424, 258 *A.*2d 724; *Heidrick, supra,* 135 *N.J.Eq.* at 327–28, 38 *A.*2d 442; *Couch, supra,* § 29.4 at 243; Note, *Life Insurance Beneficiaries and Divorce,* 65 *Tex. L.Rev.* 635, 637 (1987) (Texas Note). Although this Court has not addressed the issue, the Law Division has indicated that a specific provision in a property settlement agreement can effect a change of beneficiary. *Novern, supra,* 107 *N.J.Super.* at 578, 259 *A.*2d 504. Similarly, the Appellate Division has held that in certain circumstances a provision in a judgment of divorce can override the designation in the insurance policy. *Prudential Ins. Co. of Am. v. Prashker,* 201 *N.J.Super.* 553, 493 *A.*2d 616 (1985).

Robert and Leah's separation agreement does not fit within the exception. The agreement did not mention Robert's life insurance policy and provided only that Leah waived generally any interest in Robert's personal property. Apparently, Robert understood that the agreement did not encompass the policy.

Otherwise, his statements to the administrator that he intended to change the beneficiary would make no sense.

The absence of evidence, however, does not deter the majority. In addition to modifying the insurance policy, the majority has also modified the terms of the property settlement agreement. By creating a presumptive revocation of Leah's beneficial interest, the majority has effectively rewritten the agreement. In doing so, the majority has contravened the rule that courts should not make different contracts from those that the parties made for themselves. *In re Community Medical Center*, 623 *F.*2d 864, 866 (3d Cir.1980); *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989); *Washington Constr. Co. v. Spinella*, 8 *N.J.* 212, 217–18, 84 *A.*2d 617 (1951); *Girard v. Pardun*, 318 *N.W.*2d 137, 139 (S.D.1982); *Couch, supra,* § 29.4 at 243.

By finding that the general waiver in a property settlement agreement presumptively revokes a beneficiary's interest in life insurance proceeds, the majority has overturned settled law and ignored the facts of this case. Until today, insureds, insurers, and beneficiaries could rely on the rule that to change the designation of a beneficiary, the insured was obliged to comply substantially with the policy. That clear rule is now replaced with one fraught with uncertainty. Administrators and executors, heirs and beneficiaries, and perhaps even strangers to the policy, may now try to overturn the designation of a beneficiary in a life insurance policy. This result is admittedly more flexible than the one tolerated by the present rule. The cost of heightened flexibility, however, is uncertainty. Nowhere is uncertainty less welcome than in the law of after-death transfers.

Nothing in the majority's rule facilitates the ability of divorcing spouses to contract about life insurance policies in property settlement agreements. Spouses could agree as readily about those policies under the former rule as under the new one. In the absence of a specific provision in the property settlement

agreement, the uninsured spouse formerly could rely on receipt of the proceeds if he or she were designated as the beneficiary in the policy. The certainty of that rule is tempered by the exception that permits a change of beneficiary by an insured who substantially complies with the policy requirements. In a comparable context, we recently adopted a rule permitting probate of a will when witnesses have substantially complied with attestation requirements. See *In re Ranney*, 124 *N.J.* 1, 589 *A.*2d 1339 (1991). It is one thing to respect substantial compliance with the policy requirements for changing beneficiaries or the statutory requirements for the execution of a will. To revoke the designation of a beneficiary because of a divorce is a quite different matter.

Because payment of policy proceeds is so swift and certain, life insurance has become, as the majority observes, the "modern means of transferring assets" after death. *Ante* at 342–343, 590 *A.*2d at 1162–1163; *accord* Texas Note, *supra,* 65 *Tex.L.Rev.* at 635 (citing T. Atkinson, *The Law of Wills* § 39 at 161 (2d ed. 1953)). One reason for the appeal of life insurance is that payment of the proceeds is quicker, more efficient, and more certain than the distribution of assets under a will. Texas Note, *supra,* 65 *Tex.L.Rev.* at 635. Thus, life insurance avoids the cost and delay inherent in probate. *Ante* at 342–343, 590 *A.*2d at 1162–1163; *see also* Senate Judiciary Committee Public Hearing on Uniform Probate Code Bills at 9 (Testimony of Professor Richard Wellman, Chief Reporter of the Special Committee on the Uniform Probate Code) (noting that because of its complexity and inefficiency, people have sought to avoid probate). Although the majority endorses those goals, its rule undermines them. Under that rule, unless a separation agreement specifically provides that the former spouse is to remain as the beneficiary, life insurance proceeds become fair game. In effect, the majority opinion is an invitation to litigation. The inevitable consequence will be the cost of a lawsuit and delay in payment.

The substantial compliance rule adequately balances the swift and certain payment that makes life insurance so attractive with the need for flexibility. Under the rule, the insured often can change the beneficiary by merely notifying the insurer or by substantially complying with the policy requirements. *See Bersch v. VanKleek,* 112 *Wis.*2d 594, 598–99, 334 *N.W.*2d 114, 117 (1983) (noting ease with which a life insurance beneficiary designation may be changed) (citing *Redd v. Brooke,* 96 *Nev.* 9, 11, 604 *P.*2d 360, 361 (1980)); *Williston, supra,* § 916 at 479 (usual mode of changing beneficiary is written notification of insurer). Here, for example, Robert could have removed Leah as the beneficiary simply by notifying the insurer. Although apparently appreciating the need for such notification, he elected not to do so.

The majority now places on the beneficiary the burden to provide specifically that the designation is unaffected by their divorce and settlement agreement. The rule overlooks that not everyone intends that divorce should deprive a former spouse of life insurance proceeds. True, the partings in many divorces are bitter. *Ante* at 345, 590 *A.*2d at 1165. Others, however, are simply the parting of two people who have decided to go their separate ways. The record is devoid of empirical evidence supporting the proposition that the proper balance of interest favors treating a divorce and settlement agreement as a presumptive revocation of the insured's designation of a former spouse as the beneficiary. I would leave such a determination to the Legislature.

The absence of a statute providing that divorce presumptively revokes the designation of the spouse as a beneficiary cannot be attributed to legislative insouciance. As the majority points out, *ante* at 343–344, 590 *A.*2d at 1164, the Legislature has provided in *N.J.S.A.* 3B:3–14 that divorce revokes a testamentary disposition in favor of a former spouse. The absence of a comparable statutory provision concerning life insurance policies does not mean that the Legislature also intended that divorce should revoke the designation of a former spouse as the

beneficiary. The Legislature expressed its awareness of life insurance when adopting the 1977 amendments to the Probate Code. *See, e.g., N.J.S.A.* 3B:8–3, :8–5, :8–6. If it had intended that divorce effect a revocation of the designation of a former spouse as beneficiary under a life insurance policy, it could have said so. Furthermore, the majority ignores the fact that life insurance policies, unlike wills, involve a contract with the insurer.

I hold to the view that marriage is essentially a partnership in which each party contributes to the venture. The diversion of earnings to pay the premium on a life insurance policy deprives both spouses of funds that would be available for other purposes. Considering their mutual contributions, spouses reasonably expect to be the beneficiaries of each other's life insurance policies and, when so designated, that the designation will continue. This expectation arises not merely from the matrimonial relationship, but also from the beneficiary's contribution, indirect though it may be, to the payment of the premiums. In the face of an express designation as the beneficiary, I am not prepared to deprive a former spouse of that expectation.

Finally, this is not a case in which the insured has clearly manifested the intent to comply with the insurer's procedures for changing the beneficiary. See, *e.g., Novern, supra,* 107 *N.J.Super.* at 573, 259 *A.*2d 504 (insured designated second wife as beneficiary when filling out new policy after old one had lapsed). This record is devoid of any evidence that Robert intended to deprive Leah of the proceeds of his life insurance. Indeed, the facts point in the opposite direction. They suggest that Robert, knowing that he was obliged to inform the insurer to effect a change in beneficiary, failed to take any steps toward that end. The majority ignores these facts, preferring instead to rely on its perception of the feelings of divorced husbands and its sense of social policy. In reaching that result, the majority has overstepped its judicial bounds and fashioned a

rule that is inappropriate for this case and unworkable generally.

I would affirm the judgment of the Appellate Division.

Justice GARIBALDI joins in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN and STEIN—4.

*For affirmance*—Justices POLLOCK and GARIBALDI—2.