## Warren County Orphans Court.

### IN THE MATTER OF THE ESTATE OF JOHN A. MESSLER, DECEASED.

Decided September 9, 1938.

For the applicant, *Morris, Downing & Sherred* (*Charles T. Downing*).

For the caveatrix, *Smith & Smith* (*Sylvester C. Smith, Jr.*).

Rosecrans, C. P. J. Decedent was survived solely by a widow to whom he had been married less than a year, and a daughter by a former wife. Both widow and daughter are of age. Administration was sought by the widow, but the daughter having filed a prior caveat the dispute came before this court for determination.

The applicable statute reads:

"If any person dies intestate, administration * * * shall be granted to the surviving spouse * * * if he or she will accept the same, and, if there be no such person, then to the next of kin of such intestate, or some of them, if they or any of them will accept the same * * *." *Rev. Stat.* 3:7-6.

The immediate source of the revision was:

"If any person die intestate * * * administration * * * shall be * * * granted to the husband or widow * * * or the next of kin of such intestate * * * or to some of them, if they or any of them will accept the same * * *." *Pamph. L.* 1914, *ch.* 47; *2 Cum. Supp. Comp. Stat.*, 146-27.

The original statute in this state governing the grant of administration was based upon the English statute of 21 *Henry VIII, ch.* 5, § 3. The act of 1914 (*supra*), was substantially a duplicate of the English statute. *Cramer* v. *Sharpe,* 49 *N. J. Eq.* 558; 24 *Atl. Rep.* 962.

The English rule of construction of the statute invested the court with discretionary power to appoint either the widow or next of kin or both (11 *R. C. L.* 34, § 21), although the widow is usually selected in preference to the next of kin.

The long established and recognized rule in this and other states has been that while the widow has not the exclusive right to administer she will be preferred. *Hill's Case,* 55 *N. J. Eq.* 764, 768; 37 *Atl. Rep.* 952; *Kocher's N. J. Probate Practice* 264; 1 *Waltzinger N. J. Probate Practice* 45; *Estate of Runyon,* 12 *N. J. L. J.* 15; 23 *C. J.* 1036.

The widow contends that the *Rev. Stat.* (*supra*) has so changed the previous law that she is now not only first entitled but that she has the sole exclusive right to administer and that it is mandatory upon the court to appoint her.

It is insisted upon behalf of the daughter that the applicable section of the Revision of 1937 (*Rev. Stat., supra*) did not affect the prior statutory law because the power of the revision commission was limited by the creating act, *Pamph. L.* 1925, *ch.* 73, § 2 (*Rev. Stat. Vol. I, p. ix*), which provided, *inter alia,* "that no changes shall be made in the phraseology or distribution of the sections of any statute that has been made the subject of a judicial decision by which the construction thereof as established by such decision shall or can be impaired or affected." Not so on that ground. It is now immaterial whether or no the revision commission did or did not exceed the power conferred by the law of 1925 (*supra*). The legislature adopted the work of the revision

commission by enacting *Pamph. L.* 1937, *ch.* 188 (*Rev. Stat. title* 1, *p.* 1). The adopting act provided that this work "is hereby adopted as all the public statute law of the State of New Jersey of a general nature." It is not to be presumed that the revision commission deliberately exceeded its powers. If they erred, their error unfortunately is now the law. For courts to hold otherwise and attempt to determine as to each particular section of the revision whether unauthorized changes were made by the commission would lead to uncertainty and endless confusion.

However, there is a well defined rule governing the construction to be accorded changes made in existing law by revision.

"Statutes are not to be construed with our eyes closed to the history which lies back of them. The act is a revision of pre-existing legislation and the intent to change the law in a revision must be clear." *Leonard* v. *Leonia Co.,* 81 *N. J. Eq.* 489, 492; 87 *Atl. Rep.* 645.

"The intent of the legislature is to be ascertained from the context, the effects and consequence, and the reason and spirit of the law." *In re Murphy,* 23 *N. J. L.* 180, 193.

Measured by such standards the intent of the legislature to effect an uprooting of a practice recognized and established in this state for years is not clear. Rather is it apparent that it was intended to write into the revision the rule of construction of the former statute as enunciated by the courts, that other things being equal the surviving spouse should be given a preference but not an exclusive right to administer. The change was in procedural not in substantive law.

It cannot be successfully contended that any construction of either the present or prior statute would admit of the proposition that the court would be deprived of its inherent power to judge as to the qualification and fitness of an applicant for administration. The statute provides a rule of operation, but confers no absolute right without qualification. An administrator is the trustee for all interested parties, being first the creditors and then those entitled to distribution. The representative should be qualified to administer for the best interests of all concerned. There is a paucity of reported

opinion in this state on the exact point. In the few cases in which an applicant's right of preference under the statute was at issue such qualifying phrases were used as "against whom no disqualifying objection exists" and if "fit and competent." They are referred to in *Degnan's Case*, 75 *N. J. Eq.* 197, 201; 71 *A ll. Rep.* 668. The authorities from other states are collected in 23 *C. J.* 1046-1051. What renders an applicant unsuitable?

The testimony discloses that the widow is improvident and has displayed a want of care and foresight which would be likely to render the estate unsafe in her hands. At the time of the death she was familiar with the fact that the value of the estate was about $10,000 yet incurred funeral expenses of about $2,000 including a casket for $1,750 with apparent indifference.

The widow exhibited a woeful lack of knowledge of ordinary business dealings. Asked upon cross-examination as to the purpose of the surety company bond offered by her upon application for administration she testified that the principal sum of $20,000 would be set aside by the company in a bank for her to draw upon. The administration will involve settlement of accounts of a rather complicated partnership, engaged for a long number of years in the trucking and road contracting business.

There was some evidence that the widow intermeddled with assets of the estate by removing an antique spool bed from the attic of a farm house owned by the decedent to a blacksmith shop near the property where she now resides.

It developed at the hearing that the decedent was the administrator of his first wife's estate. She died in the year 1931. No inventory or accounting was ever filed by him. The administrator's bond was for $3,000, but the daughter never received anything from her mother's estate, and it remains unsettled. The legal representative of the present estate will be required to make an accounting for the deceased administrator. *Rev. Stat.* 3:10-9. The interest of this widow as the accountant of the deceased administrator of her husband's first wife's unsettled estate would be directly antagonistic to her interest as administrator of her husband's

estate. She would also thus come into conflict with the interests of the only child of the first marriage, and the person entitled to the major part of her mother's unsettled estate. *Cornpropst's Appeal,* 33 *Pa.* 537.

The testimony further indicates that antagonism, unfriendly feeling, inharmonious relations and differences exist between the widow and the daughter; that the widow is indifferent to the interests of the estate; that she has expressed a purpose to act arbitrarily without consideration of the daughter's wishes or best interests. Such have been held to be disqualifications. *Warner's Estate,* 207 *Pa.* 580; 57 *Atl. Rep.* 35.

The Pennsylvania statute is basically similar to ours and the rule has there been stated to be:

"It is apparent from the decided cases that the appointment of the surviving spouse is not mandatory in all cases. That they have a *prima facie* right to so act is without question; the register may not lightly set aside anyone within the class entitled and prefer one in a remoter class or a stranger. Appointees as administrators must not possess any of the disqualifying characteristics mentioned." *Friese's Estate,* 317 *Pa.* 86; 176 *Atl. Rep.* 225.

And the Washington rule:

"Where the ill feeling existing between those eligible for appointment would be conducive of continuous litigation with resultant loss to the estate, then the court may appoint any suitable person to administer the decedent's estate. That is, under the facts of this case at bar, the statute prescribing the order in which persons are entitled to administer an estate is not mandatory, and does not prevent the appointment of a stranger as administrator." *Re Thomas,* 8 *Pac. Rep.* (2d) 963; 80 *A. L. R.* 819, 823.

On behalf of the caveatrix it is proposed that if she be not appointed as sole administratrix that administration should be confided to both widow and daughter which would thus include all of those interested in the distribution of this estate. The widow asserts they could not agree. Joint administration is not ordinarily favored. *Runyon's Estate,* 12 *N. J. L. J.* 15; 23 *C. J.* 1046. In view of the differences existing between them such procedure would offer no solu-

tion, but would tend to invite frequent conflict. Much that .has been pointed out concerning antagonism and hostile interests and which form objections to the appointment of the widow would also serve to disqualify the daughter as sole administratrix.

The testimony as well as the demeanor of the parties leads to the conclusion that the widow is disqualified from being accorded the usual preferential right to administer; that the daughter is also disqualified and that the best interests of this estate will be served by the appointment of a competent impartial administrator.