IN THE MATTER OF THE ESTATE OF MARY MAGURA, DECEASED.

Hudson County Court
Probate Division

Decided April 18, 1952.

234

*Mr. Jack Geddy Goldberg,* attorney for Michael Magura, petitioner.

*Mr. Stephen Piga,* attorney for Mary P. Link, guardian, etc., adm'x.

DREWEN, J. C. C. Mary Magura died intestate November 24, 1950, resident and domiciled in the City and State of New York. Surviving are her husband, Michael Magura, and an infant grandchild, Mary H. Link. The husband is resident in New York. The grandchild and her mother, who is the guardian herein, reside in New Jersey. Upon application made February 28, 1951, general letters of administration were issued on March 30, 1951, to the said Michael Magura by the Surrogate of New York County. On March 10, 1951, complaint for letters of administration in New Jersey was filed with the Surrogate of Hudson County by Mary P. Link as mother and guardian of the grandchild. Thereupon notice of the application, returnable March 24, 1951, was deposited by the Hudson surrogate in due course of mail and directed to the said Michael Magura at his residence, 514 W. 135th Street, New York City. On the noticed date the letters applied for by the mother and guardian were granted. Their validity is now attacked by the said Michael Magura, both as surviving spouse and as the holder of general letters issued in the jurisdiction of decedent's domicile.

The first point of objection goes to the sufficiency of the surrogate's notice and is based on *Rule* 3:88–2(*b*). This rule requires "that 60 days' notice, or such notice not less than ten days in length, as the court may by order direct" be "given to all * * * who reside without the State." In this instance what the surrogate gave was notice of 14 days. The argument is that this reduction from the maximum notice stated in the rule vitiates the notice altogether for the reason that the surrogate made no order in writing fixing the lesser period. It is contended to be the intent of the rule to require, where the lesser period is fixed, that the order therefor be in writing. In *Clapp's Wills and Adminis-*

*tration,* 8 *New Jersey Practice, secs.* 1131 and 1132, *chapter* 16, appropriate forms of petition and order are suggested, and the accompanying text is:

"Where the persons entitled to notice are non-residents, the above petition and order are required in every case where less than sixty days' notice is desired. If sixty days' notice is satisfactory, the petition stated in Section 1131 and the order in this section are not needed."

It is my opinion that in the very nature of things any written order requirement must be deemed directory and not mandatory. All in all, the matter involved is within the sound discretion of the court, the object always being the prevention of injustice, or prejudice to the rights of others. Certainly inadequate notice would be none the better because sanctioned by a written order, and adequate notice none the worse for the want of such an order. It is a necessity of the husband's contention here that the requirement for a written order be taken as absolute, since any departure from that standard must admit the requirement to be discretionary, that is, discretionary in the absence of prejudice or injustice, which I believe to be the sole criterion. If indeed the requirement were to be taken as absolute the result could well be an improvident waste of procedure and a definite working of prejudice as well. An instance readily suggests itself, one for example where the notice given was indisputably adequate, though less than the maximum, and where written order had been omitted. Would any good be served by vitiating such notice? To interpret the rule as petitioner asks would take from this matter of notice all considerations of its substance and leave it to be dominated by those of form. And even conceding the legitimate formality of a written order, I see no reason why the formality would not be entirely satisfied by a written order *nunc pro tunc.*

*Rule* 3:61, which by *Rule* 5:3–8 is made applicable to the Probate Division of the County Court, provides a further corrective for the situation, assuming the need. The rule is:

"Neither error in the admission or the exclusion of evidence, nor error in any ruling or order or in any action taken or omitted by the court or by any of the parties, nor any other matter, whether or not involving the exercise of discretion, shall constitute ground for * * * vacating, modifying or otherwise disturbing a judgment or order, unless a denial of the relief sought appears to the court to be inconsistent with substantial justice."

I do not see how the latter rule can be understood except as cancelling completely the importance of a written order requirement where, after the procedure has been completed, no matter of substance is shown to be involved in its omission and no party to be aggrieved by reason of prejudice to his rights.

The next ground of objection is that the notice mailed by the surrogate was actually not delivered. The fact is that it was returned to the surrogate bearing the post office stamp "Not at the address given." The problem presented by this objection is simplified in that there is no question but that the said Michael Magura did reside at 514 W. 135th Street, and that the notice had been addressed to him at that address in full compliance with the rule, and had been properly mailed. Its return by the postal authorities, undelivered, is not explained. As to this, however, it is enough to say that proof of actual delivery is not required. All that is required by the rule was done. I need not suggest how prohibitive necessity for proof of actual delivery would be. It is all too obvious. The essential thing is that as matters have turned out petitioner has been in no way prejudiced. Whatever objections he could have made before the surrogate upon return of the notice were equally available to him in these proceedings. Indeed, no prejudice is complained of. Petitioner does not ask ancillary letters for himself, not that a different result would be required if he did. He seeks only to prevent the issuance of any letters whatever in this jurisdiction, and specifically to the mother as guardian of the grandchild.

It is next urged that the Hudson surrogate was without jurisdiction to grant the letters complained of, and

in any case that petitioner, as domiciliary administrator, has paramount right over the ancillary. The decision here is within the sound discretion of the court. *Normand's Adm'r. v. Grognard (Prerog. 1865, 17 N. J. Eq. 425)*; See also *Simoni v. D'Ippolito, 8 N. J. 271, 278 (1951)*; *In re Election of Cape May, &c. Nav. Co., 51 N. J. L. 78, 82 (Sup. Ct. 1888)*; *In re Dellinger, 94 N. J. Eq. 409, 420 (Prerog. 1922)*; *In re Healey, 4 N. J. Misc. 785, 787 (Orph. Ct. 1926)*. Since the ruling is discretionary, it is in order that the situation be clearly set forth. In the first place, under the statutes of New York and New Jersey alike the grandchild is entitled to two-thirds of the personalty, all of the estate apparently being in property of that kind, and approximately two-thirds of it having situs in New Jersey. The grandchild and her mother, guardian herein, are both resident in New Jersey. Adequate bond has been posted here for the protection of the general administrator who, as already noted, is not asking for the issuance of letters to himself, and to whom the ancillary is accountable. Under these circumstances I see no reason for creating the condition that would ensue upon a revocation of the ancillary letters and quite obvious reason for not doing so.

 Generally, of course, the surviving spouse is entitled to administration (*R. S.* 3:7–6), but the right is not absolute. *Messler's Estate, 16 N. J. Misc. 434 (Orph. Ct. 1938)*. The validity of the letters ancillary to Mary P. Link, guardian, seems perfectly clear from the terms of *R. S.* 3:7–10 and *Rule* 3:88–2. True, the statute does not explicitly provide for ancillary letters in a case like the present where they were issued before domiciliary administration had been granted, but as Clapp (*supra*) says, in *vol. 6, c. 6, sec. 394*:

"The statutes governing the Surrogate's Court leave it somewhat in doubt whether administration need be granted first at the domicile before it is granted locally. As a matter of practice the Essex County Surrogate's Court and most other Surrogate's courts issue letters as to non-resident decedents even though there is no domiciliary administrator * * *."

Petitioner relies mainly on *In re Fischer,* 118 *N. J. Eq.* 599 (*Prerog.* 1935), but that case does not sustain him. There the rejected ancillary was a stranger to the estate; and on a factual parity with the present case, the principle enunciated in the *Fischer* decision would be found directly contrary to that for which plaintiff argues. There a New Jersey resident had sought letters of administration in New Jersey on the estate of a New York decedent who had left property in this State. Fischer had untruthfully represented that decedent died a resident of New Jersey and general letters were issued to him without notice to decedent's brother, a resident of New York. Shortly thereafter Fischer became insane and his relatives, again without notice to decedent's brother, secured revocation of the letters to Fischer, and the granting of letters to one Mermelstein, a stranger to the estate. Decedent's brother, having obtained general letters in New York, brought suit in New Jersey to have the Mermelstein letters set aside and letters granted to himself. The court held that decedent's brother had a better right to the letters than Mermelstein, a stranger to the estate, and therefore granted the relief demanded. However, as to the letters granted Fischer in the first instance, and as to what the situation would have been had Fischer proceeded properly upon due notice, the court says, at *p.* 608:

"Since the established fact is that decedent's domicile was New York, the letters issued by this court in September, 1933, would have been ancillary, not general, had it not been for the court's reliance on the representation of the then petitioner, Fischer, that that domicile was New Jersey. * * * In September, 1933, no domiciliary administrator had been appointed in New York, so that the ancillary letters here could not be issued to such domiciliary administrator, and might well have been issued to Fischer,—he being the husband and entitled to the larger share of the net estate under the statute of distribution of the domiciliary state, New York."

Petitioner also relies on *In re Heinze,* 93 *N. J. Eq.* 672 (*E. & A.* 1922) and *Potter v. First National Bank,* 107 *N. J. Eq.* 72 (*Ch.* 1930). The latter case is not in point. In the *Heinze* case there were no *bona fide* creditors or other

claimants in New Jersey, with the exception of one who was paid by the ancillary administrator in this State. See *Wall v. American Smelting Co.*, 91 *N. J. Eq.* 131 (*E. & A.* 1919).

In denying the jurisdiction of the surrogate for the issuance of the letters to Mary P. Link, counsel deals with them as general letters and he emphasizes the absence of domicile in New Jersey to manifest their illegality. But they are not general letters, nor is it contended by the guardian that they are. The supposition that they were so intended arises, in part at least, from the claim that in the complaint for their issuance the fact of domicile was misrepresented, a feature of the controversy presently to be considered. It appears to be the practice of the Surrogate of Hudson County to issue ancillary letters without any particular designation as such. But certainly that cannot make them anything but what they are. Moreover, on the face of the letters as issued, the recital that decedent had died in the City of New York and was resident in the State of New York demonstrates their ancillary character.

Petitioner's case under this rule includes a charge of fraud upon the court, and there are affidavits *pro* and *con.* The averment is that the guardian's complaint for letters contained the false statement that decedent had died a resident of Hudson County, the truth being that she had died a resident of New York. Petitioner's attorney says that on August 28, 1951, he, together with an associate, examined the original complaint in the surrogate's office and found in it the statement in question. I have examined most carefully all the data submitted. As a result I am fully convinced, though I do not in the least doubt its complete good faith and sincerity, that the charge is groundless. Certainly it has not been substantiated. One undisputed element of fact there is which, in my judgment, alone suffices to resolve the controversy. What occasioned the error I am unable to say, but it is the fact that when the letters were received from the surrogate by the guardian's attorney it was seen that they erroneously described decedent as "late of Hudson

County." Now, the import of the charge is that it was precisely this fiction which the alleged wrongdoer had sought to foist upon the surrogate. But it is not in question that when the error in the letters had been noted by him, the attorney brought it immediately to the surrogate's attention, at the same time returning the letters for correction. It is not in the least suggested by anything in the case what possible motive there could have been for any such attempt at useless misrepresentation. The whole episode is to be regarded, in my opinion, as an unfortunate misunderstanding.

In none of the points of objection do I find any merit and the rule to show cause is dismissed.