858 A.2d 582

IN THE MATTER OF THE ESTATE OF
NOREEN DI BELLA, DECEASED.

NOREEN DI BELLA, PLAINTIFF v. TINO
DI BELLA, DEFENDANT.

Superior Court of New Jersey
Chancery Division, Probate Part and Family Part,
Middlesex County

Decided April 13, 2004.

*Richard H. Greenberg,* for plaintiff Gabriel Fabius (*Greenberg & Schulman,* attorneys).

*Stacey Z. Rodkin,* for plaintiff Noreen Di Bella (*Schoifet & Ramatowski,* attorneys).

*Jennifer Lazor* and *James Mohoney,* for defendant Tino Di Bella (*Riker, Danzig, Scherer, Hyland, Perretti,* attorneys).

BERMAN, J.S.C.

The question before this court is simple and straightforward, and apparently *res nova:* if a plaintiff in a matrimonial matter dies intestate while her divorce complaint is pending, who becomes Administrator of her estate [1]—her estranged husband, or son from her prior marriage? The factual and procedural histories are equally simple and straightforward and, hence, set forth.

Noreen Di Bella (hereinafter referred to as "Noreen") filed a Complaint for Divorce, and other relief including equitable distribution of property acquired during the marriage, on October 31, 2003. She died intestate on December 28, 2003. On February 25, 2004, her son from her prior marriage, Gabriel Fabius (hereinafter referred to as "Gabriel"), obtained an Order to Show Cause in the Probate Part directing Tino Di Bella, Noreen's husband at the time of her death (hereinafter referred to as "Tino"), to show cause on April 15, 2004 in the Probate Part, why he, Gabriel, should not be appointed Administrator of his late mother's estate. This Court, in the interest of judicial economy and because the issues clearly overlapped, consolidated the Family Court Complaint and the Probate Order to Show Cause.

Tino relies upon *N.J.S.A.* 3B:10–2 which states:

If any person dies intestate, administration of the intestate's estate shall be granted to the surviving spouse of the intestate, if he or she will accept the administration, and, if not, or if there be no surviving spouse, then to the remaining heirs of the intestate, or some of them, if they or any of them will accept the administration, and, if none of them will accept the administration, then to any other person as will accept the administration.

Relying upon this legislative enactment, Tino maintains that as the surviving spouse, he must be named Administrator, and contending that the statute is clear and unambiguous, Gabriel's application cannot be sustained. In support of this position he directs the court to the halcyon 1880's and, specifically, *In re Administrator of Richard Runyon,* 12 *N.J.L.J.* 15 (Orph.Ct.1889).

---

[1] By extension, the Administrator, for all intents and purposes, would become charged with prosecuting the divorce complaint.

Of passing interest is the fact that while adultery, as the *Runyon* Court pointed out, could disqualify a spouse from becoming Administrator of his/her spouse's intestate estate, separation did not, our forefathers apparently taking a dimmer view of extramarital mischief.

Tino further argues, by analogy, that had our legislature intended to disenfranchise one estranged spouse from serving as Administrator of the other's estate, they could have and would have so stated, no differently than their pronouncement that an estranged spouse is precluded from receiving an elective share. More specifically, *N.J.S.A.* 3B:8–1 states:

> If a married person dies domiciled in this State, on or after May 28, 1980, the surviving spouse has a right of election to take an elective share of one-third of the augmented estate under the limitations and conditions hereinafter stated, provided that at the time of death the decedent and the surviving spouse had not been living separate and apart in different habitations or had not ceased to cohabit as man and wife, either as the result of the judgment of divorce from bed and board or under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to a decedent prior to his death under the laws of this State.

Gabriel maintains that his step-father's position is allergic to reality on two fronts: (1) that *N.J.S.A.* 3B:10–2 does not confer an absolute right on a surviving spouse to be Administrator for his widow; and (2) the court cannot apply the statute to reach an illogical result. Inexorably, Gabriel must be sustained.

Predecessor statutes to *N.J.S.A.* 3B:10–2, which are similarly worded, do not support Tino's position. See, e.g., *In re Messler's Estate,* 16 *N.J. Misc.* 434, 1 *A.*2d 322 (Orph.Ct.1938). The applicable statute at that time in pertinent part provided: "If any person dies intestate...administration...shall be granted to the surviving spouse." Common Pleas Judge Rosecrans, however, speaking for the Court opined: "The long and established rule in this and other states has been that while the widow has not the *exclusive* right to administer she will be *preferred.*" *Id.* at 438, 1 *A.*2d at 324 (emphasis supplied). Judge Rosecrans further stated:

> It cannot be successfully contended that any construction of either the present or prior statute would admit of the proposition that the Court would be deprived of its inherent power to judge as to the qualification and fitness of an applicant for

administration. The statute provides a rule of operation, but confers no absolute right without qualification. An administrator is the trustee for all interested parties, being first the creditors and then those entitled to distribution. The representative should be qualified to administer for the best interests of all concerned. There is a paucity of reported opinion in this state on the exact point. In the few cases in which an applicant's right of preference under the statute was at issue such qualifying phrases were used as "against whom no disqualifying objection exists" and if "fit and competent."

[*Id.* at 436–37, 1 *A.*2d at 323–24.]

And in *Messler's Estate,* Mr. Messler's widow was in fact disqualified from serving, based upon Judge Rosecrans' concerns about her "inharmonious" relationship with her step-daughter (the decedent's daughter from a prior marriage); and her having "intermeddled" with assets of the estate, having removed an "antique spool bed from the attic of a farm house...to a blacksmith" nearer her new residence. *Id.* at 437, 1 *A.*2d at 324. *See also In re Magura's Estate,* 19 *N.J.Super.* 233, 88 *A.*2d 291 (Cty.Ct.1952).

Secondly, the appointment of Tino as Administrator of Noreen's Estate creates a toxic conflict of interest[2]. If the matrimonial cause is litigated, would he sit at Plaintiff's counsel table as Administrator, or defense table in his personal capacity? If settlement is explored, how does he as Administrator approve the resolution of a claim against himself? As Vice Chancellor Jayne cautioned:

There is perhaps no rule more firmly imbedded in our legal and equitable concepts than that which positively forbids every person who acts in a representative capacity from manipulating his authority for his own personal gain to the disadvantage of his principal. Indeed, a person assuming such a relationship is not permitted to place himself amid opportunities that tempt him to take advantage of his principal or cestui que trust.

[*Taylor v. Errion,* 137 *N.J.Eq.* 221, 226, 44 *A.*2d 356, 359 (1945).]

In conclusion, we are guided by the eminent jurist Learned Hand: "There is no surer way to misread a document than to read it literally." *Guiseppi v. Walling,* 144 *F.*2d 608, 624 (2d Cir.1944).

---

[2] One should remain mindful of the fact that when a legislative pronouncement, (here *N.J.S.A.* 3B:10–2), collides with the Rules of Court, (here the Rules of Professional Conduct), the latter will prevail. See *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 626 *A.*2d 425 (1993).

The same has also been said of a statute: "If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity." *State v. Clark,* 29 *N.J.L.* 96, 99 (Sup.Ct.1860).

For the reasons set forth hereinabove, Gabriel is appointed Administrator for Noreen's Estate. That said, this court expresses no view at this point on the surviving merits, or lack of merits, of the posthumous divorce claims (i.e. equitable distribution and counsel fees); nor does the court now pass on either Tino's right or Gabriel's right to participate in Noreen's Estate, or to what extent. Those conflagrations will no doubt be raised anew on motion by Gabriel, Tino, or both.