**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1493-25

IN THE MATTER OF THE
ESTATE OF AGNIESHKA
BURKE, DECEASED.

_____

Argued April 20, 2026 – Decided June 29, 2026

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-000420-24.

Marisa Lepore Hovanec argued the cause for appellant Jared Burke (Hovanec & Divito, LLC, attorneys; Marisa Lepore Hovanec, of counsel and on the brief).

Joshua P. Donovick argued the cause for respondent Katarzyna Kostro (Skylands Legal LLC, attorneys; Joshua P. Donovick, on the brief).

PER CURIAM

In this probate matter, Jared Burke, the estranged husband of decedent Agnieshka Burke, appeals from a November 6, 2025 order that: (1) denied his

motion for summary judgment, (2) permitted Agnieshka's[1] estate to seek equitable distribution in the pending divorce matter between the parties, (3) determined Jared had an irreconcilable a conflict of interest in that matter precluding him from serving as the executor in any disputed equitable distribution proceeding in the Family Part, and (4) referred to the Family Part all disputed issues related to equitable distribution of her estate including whether her life insurance policy constituted marital property. For the reasons discussed below, we affirm in part and remand in part.

## I.

We restate the facts from the sparse record before us.[2] This appeal arises from a probate action commenced after Agnieshka's unexpected death on August

---

[1] Because the parties share the same surname, intending no disrespect, we use first names for clarity in this opinion.

[2] There is no dispute between the parties with respect to the underlying events, procedural history, and the respective relief sought. We discern the relevant facts from Agnieshka's will, Jared's statement of material facts submitted to the court as part of his application for summary judgment, and the hearing transcripts but note the following are not included in the record before us: (1) Agnieshka's life insurance policy; (2) Agnieshka's sister Katarzyna Kostro's complaint, application to show cause, and caveat in the probate matter with respect to the will; (3) Jared's answer in the probate matter; (4) Kostro's application to show cause in the Family Part; (5) the Family Part's October 1, 2024 order enjoying the transfer of marital assets; and (6) the federal district court's February 18, 2025 order dismissing the life insurance company.

14, 2024, while legally married to Jared. Five months prior to her death, Agnieshka filed a complaint for divorce against Jared, for which no final judgment has been entered. Her only heirs were Jared and their two children. She maintained a term life insurance policy with a face value of $500,000 with Jared as her sole beneficiary.

Prior to her death, but before the initiation of the divorce proceedings, Agnieshka also executed a twenty-five-article last will and testament.[3] Following her death, the will was admitted to probate, and letters testamentary were issued to Jared.

In relevant part, the will provided that Agnieshka was "married to Jared Thomas Burke and any reference to [her s]pouse shall be to Jared Thomas Burke." The will appointed "[her s]pouse, Jared Thomas Burke, to serve as [e]xecutor" and appointed "[her] sister, Katarzyna Kostro, to serve as [successor e]xecutor" in the event the initial executor "has failed to qualify or ceased to serve as an [e]xecutor." The will appointed Jared as guardian of her children.

The will gave "all [her] tangible personal property . . . to [her s]pouse," and if he did not survive her, the replacement executor was authorized to sell

---

[3] Although initially not in the record, the parties submitted Agnieshka's will as a supplemental appendix upon our request at oral argument.

any property that he or she "may determine [Agnieshka] would not wish to have preserved for [her] children." The residuary estate was also left to her spouse, and in the event he did not survive her, the residuary estate passed to "[her] descendants." In a section entitled "Takers of Last Resort," the will distributed "any property that [was] not otherwise disposed of under this [w]ill" to her sister.

In article twenty-three entitled "Definitions and Miscellaneous Provisions," the will defined "spouse" as "the person (if any) to whom that individual is married at any given time." The will defined "surviving spouse" as "the person (if any) who survives that individual and who is married to and living with that individual as a married couple at the time of his or her death . . . ." The will further defined "[m]y spouse" as "Jared Thomas Burke." Within that definition, the will defined "[m]y surviving spouse" also as Jared if he "is married to [her] and living together with [her] as a married couple at the time of [her] death . . . ."

After the will was admitted to probate, Kostro filed a caveat and protest of "any paper purporting to be the [w]ill . . ., as well as the appointment of a personal representative for [her e]state." Further, she filed a complaint and order to show cause for probate of the will and appointment of executor. In her complaint, she specifically sought, among other relief: (1) to revoke any

4

appointments and distributions to Jared based on the doctrine of implied revocation and the will's express provisions; (2) to find he has a conflict of interest with respect to his appointment as executor due to the pending divorce litigation; (3) to appoint herself as executor; (4) to withhold distribution of the proceeds of Agnieshka's life insurance policy and find its proceeds belong to the marital estate subject to equitable distribution.

In response to Kostro's complaint, Jared filed a verified answer and sought, among other relief: (1) to dismiss the caveat; (2) to find he has no conflict of interest; (3) to order the appropriate appointments and distributions to himself under the will; (4) to appoint himself as the executor; and (5) to distribute the proceeds of the life insurance policy as his sole property.

Separately, in the Family Part, Kostro filed an order to show cause seeking, among other relief, her appointment as personal representative of Agnieshka's interests in the divorce proceedings and to continue the action on her behalf. In response, the court entered an October 1, 2024 order restraining and enjoining any party from transferring any marital assets, and requiring that any life insurance policy proceeds be placed into the parties' counsel's trust account, pending further court order. Further, a federal district court entered a February 18, 2025 consent final judgment order providing, in relevant part, for

the life insurance proceeds to be deposited into the attorneys' trust account, and for the parties' respective claims to the life insurance proceeds to be litigated in the Superior Court of New Jersey without further participation by the company.

Following the stay in the Family Part and resolution of the matter in federal district court, Jared filed an application in the Probate Part seeking summary judgment to dismiss all Kostro's claims and affirming his appointment and rights under the will. He asserted the will was valid, the estate had no right to equitable distribution, and as such, there was no conflict of interest, and the life insurance proceeds belonged solely to him.

Kostro filed a cross-motion seeking summary judgment on her respective claims and denying his counterclaims. In light of the outstanding divorce proceedings between Agnieshka and Jared and the will's definition of "my surviving spouse" that required the parties to be "living together," Kostro asserted Agnieshka intended to exclude him from her will.[4] She argued the estate has the right to equitable distribution pursuant to N.J.S.A. 2A:34-23(h)(2) ("subsection (h)(2)"). She maintained the life insurance proceeds belonged to

---

[4] The record does not indicate whether the parties were, in fact, living together at the time of Agnieshka's death, or at any time while divorce proceedings were pending. We note, however, neither party seems to dispute the fact that they were separated.

A-1493-25

the marital estate and were subject to equitable distribution such that Jared has a conflict of interest due to his responsibilities as executor.

At oral argument before the court, Kostro argued she was named as the substitute executor of the will and that the language of the will created a "distinction between my spouse and my surviving spouse." She maintained Jared had a conflict of interest because the intention of subsection (h)(2) "is that the interests of other stakeholders in this type of situation where someone has died after the complaint for divorce has been filed . . . must have a venue to be heard and to be advocated for." She asserted he "cannot both simultaneously represent his own interests and those of his successor beneficiaries." In response, Jared maintained he met both definitions of spouse and surviving spouse as they appear in the will and contended Agnieshka clearly intended him to be the executor. He asserted subsection (h)(2) was only intended to protect the "surviving spouse," not the estate, consistent with the statute's legislative intent.

After considering the parties' arguments and submissions, the court initially concluded it could not rule on whether a conflict of interest existed in light of the unresolved issue of whether an estate, under subsection (h)(2), can pursue equitable distribution in the Family Part on behalf of a spouse who dies

7

during divorce proceedings.  The court decided the Probate Part was, indeed, the proper venue to decide that "legal threshold issue."  The court requested additional briefing from the parties with respect to equitable distribution and scheduled an additional hearing on November 5, 2025.

At the November 5th proceeding, Jared argued subsection (h)(2) only applied to the surviving spouse and cannot benefit the estate as "the amendments to the statute in 2023 were to close the equitable distribution black hole" recognized in Carr v. Carr, 120 N.J. 336 (1990).  He contended, in Carr, our Supreme Court "determined that [such] a black hole existed when one spouse died during the marriage and that the decedent spouse had written the surviving spouse out of their will."  Because Kostro on behalf of the estate was pursuing equitable distribution, and not the surviving spouse, Jared asserted "[t]his [was] not the situation that the [L]egislature was addressing when [it] amended the statute, and that [was] reflected in the legislative history . . . ."

In the event equitable distribution could be pursued, Jared argued, under the will, the children are "the alternate beneficiaries of anything" and Agnieshka had named him "as guardian of the children."  Accordingly, he, as the "sole caretaker and provider of those children," had no conflict "where it [was] his responsibility to take care of the children."  He also asserted the court could

8

distribute the proceeds of the life insurance as "[t]erm policies for life insurance are not subject to equitable distribution."

The court held the estate could invoke subsection (h)(2) to pursue equitable distribution and decided the statute "seem[ed] very clear" that "this [was] a situation that [the statute] considered," because subsection (h)(2) provides if "either party to the litigation dies prior to the entry of final judgment . . ., the court's authority to effectuate an equitable distribution of the property shall not abate." (emphasis added) (quoting N.J.S.A. 2A:34-23(h)(2)).

In light of its decision that subsection (h)(2) did not preclude the estate from seeking equitable distribution, the court next concluded Jared had a conflict of interest. Relying on In re Est. of Di Bella, 372 N.J. Super. 350 (Ch. Div. 2004), the court found a "toxic conflict of interest" existed because, as executor of the will and also the opposing party to the proceedings, Jared's interests were directly adverse. The court concluded it "was not saying that [Jared was] out as executor" entirely, but rather only with respect to the issue of equitable distribution in the matrimonial litigation. The court did not, however, decide who would become the "substitute executor." Further, the court held the proceeds of the life insurance policy would not "go through [p]robate" because

A-1493-25

whether the estate will be awarded equitable distribution remained an open question "in the purview of the Family Part."

The following day, the court issued a conforming order denying both parties' application for summary judgment and found:

> A. The [c]ourt finds and declares that N.J.S.A. 2A:34-23(h)(2) permits the personal representative of the estate of a decedent to seek equitable distribution before the Family Part when an application for dissolution of marriage has been filed and not dismissed pursuant to R. 4:6-2 . . ., and thereafter but prior to the entry of final judgment either party to the dissolution proceedings should die.
>
> B. The [c]ourt finds and declares that [Jared], has a conflict of interest between his interests as an individual and his fiduciary responsibilities to [Agnieshka's estate] with respect to the [e]state's right to seek equitable distribution, and therefore is disqualified from serving as the [e]xecutor of the [e]state for that purpose.
>
> C. The [c]ourt finds and declares that the question of whether the proceeds of [life insurance policy held on Agnieshka's life] belong to the marital estate of the [Agnieshka] and [Jared], or whether the proceeds belong to [Jared] as the named beneficiary, is within the jurisdiction of the Family Part and shall be subject to further proceedings therein.

After the court issued its order, Jared filed an application seeking interlocutory appeal, which we granted.

II.

Before us, Jared argues the court misconstrued subsection (h)(2) because it was not intended to allow a personal representative of an estate to pursue equitable distribution. Rather, in light of the amendment's legislative history, he contends it only permits the surviving spouse to pursue equitable distribution. Specifically, he argues the Senate Committee Report's repeated emphasis on the surviving spouse and its failure to mention the deceased's spouse estate or personal representative support such an interpretation. He also relies upon Carr, 120 N.J. at 336, for the assertion that the "black hole" identified by the Supreme Court and addressed by N.J.S.A. 2A:34-23(h)(2), only applies to surviving spouses, not estates.

Jared further contends the court's decision improperly creates a "free-floating property right that attaches to the estate by operation of law upon a litigant's death." He asserts allowing the estate to seek equitable distribution "violates bedrock probate principles" that the "testator's intent is paramount" and "yields results so inconsistent with both probate and matrimonial jurisprudence as to be unworkable." He contends the court's order implicitly "invalidate[d]" N.J.S.A. 3B:3-14, which "only" permits revocation of probate transfers in the event of a marriage annulment or divorce. In the event

11

subsection (h)(2) permits the estate to initiate equitable distribution on behalf of the deceased spouse, Jared argues there is no conflict of interest because "nothing in statutory text or structure suggests that such a right should automatically disqualify a surviving spouse from serving as [e]xecutor of the decedent's estate when otherwise duly appointed." Finally, he maintains, regardless whether subsection (h)(2) permits equitable distribution under the circumstances, the court's referral to the Family Part with respect to the life insurance policy was incorrect. He asserts proceeds of life insurance, "by definition . . . were not acquired 'during the marriage,' as the marriage ended upon [Agnieshka's] death" and maintains "there [was] no legitimate reason to refer that issue to the Family Part."

## III.

We review a decision on the interpretation and application of a statute de novo. Pugliese v. State-Operated Sch. Dist. of City of Newark, 454 N.J. Super. 495, 503 (App. Div. 2018). "When interpreting a statute, [the] aim [is] to effectuate the Legislature's intent, which is best indicated by the statutory text." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (citations omitted). "In construing statutory text, 'words and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear

intent of the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation.'" Id. at 379-80 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Further, we review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). For mixed questions of law and fact, we give deference to the court's supported factual findings but review de novo the court's application of any legal rules to such factual findings as the court's determination of the legal consequences of established facts is not due any special deference from us. See Manalapan Realty, L.P. v. Twp. Committee of Manalapan, 140 N.J. 366, 378 (1995); see also State v. Pierre, 223 N.J. 560, 576-77 (2015).

"Moreover, it has long been the practice in reviewing chancery decrees for appellate courts 'to make an independent investigation of the facts.'" In re Est. of Mosery, 349 N.J. Super. 515, 522 (App. Div. 2002) (citations omitted). That same standard of review applies to an order removing an executor or administrator. See In re Breckwoldt, 22 N.J. 271 (1956) (independently examining the record in an appeal of an order removing an executor).

13

## A.

Equitable distribution is a statutory remedy that is available following the entry of "a judgment of divorce, dissolution of civil union, divorce from bed and board or legal separation from a partner in a civil union." N.J.S.A. 2A:34–23(h). "[O]rdinarily, equitable distribution of marital assets arises only with the adjudication of divorce." Carr, 120 N.J. at 343. "[W]hen one spouse dies during the pendency of an action for divorce, the action is abated and statutory equitable distribution is unavailable." Kay v. Kay, 405 N.J. Super. 278, 283 (App. Div. 2009) (citation omitted); see also Carr, 120 N.J. at 342 (citations omitted) ("Divorce proceedings abate with the death of one of the parties").

In exceptional circumstances, however, equitable relief may be available in divorce actions following a spouse's death prior to the entry of a final judgment. Equitable remedies, including constructive trusts, may be imposed by a court to prevent unjust enrichment or fraud. Carr, 120 N.J. at 352. Specifically, our Supreme Court has held that, "upon a sufficient evidentiary showing," courts may invoke "the equitable remedy of constructive trust and principles of quasi-contract 'to avoid the unjust enrichment that would occur if the marital property devolving to [a decedent-spouse's estate] included the share

14

beneficially belonging to' the surviving spouse." Kay, 405 N.J. Super. at 283 (alteration in original) (quoting Carr, 120 N.J. at 353-54).

In Carr, our Supreme Court held that a surviving spouse could be granted a constructive trust following her husband's death "for the limited purpose of proving that the deceased spouse had diverted marital assets, because equity demanded that the innocent spouse have a forum through which to recover those assets for equitable distribution." Kay v. Kay, 200 N.J. 551, 553 (2010) (citing Carr, 120 N.J. at 353-54). Without this equitable remedy, the plaintiff, who initiated a divorce action against her husband prior to his death, otherwise had no "enforceable interest" against any of the marital assets in light of the late husband's decision to leave his entire estate to his children from a prior marriage. Carr, 120 N.J. at 339-40.

In Kay, our Supreme Court held the reverse was also true, specifically that "the equitable principles that supported the relief granted in favor of the surviving spouse in Carr would also inure to the benefit of the estate of a spouse making a like claim." 200 N.J. at 552. In that case, following his brother's death, the executor of the defendant's estate "sought a constructive trust to prevent the unjust enrichment that would allegedly occur if [the] plaintiff and

15

her daughter retained marital property beneficially belonging to [the] defendant." Kay, 405 N.J. Super. at 281.

On January 8, 2024, our Legislature passed a series of amendments to the equitable distribution statute, N.J.S.A. 2A:34-23, and elective share statute, N.J.S.A. 3B:5-3, which, in relevant part, added to the equitable distribution statute subsection (h)(2) which provides:

> (2) If a complaint not dismissed pursuant to R. 4:6-2 of the Rules of Court has been filed for [dissolution of a civil union], and . . . either party to the litigation dies prior to the entry of the final judgment, . . . the court's authority to effectuate an equitable distribution of the property shall not abate. Pursuant to subparagraph (a)(3) of R. 4:3-1 of the Rules of Court, all such matters shall be filed and heard in the Family Part of the Chancery Division of the Superior Court.
>
> [N.J.S.A. 2A:34-23(h)(2) (emphasis added).]

The Senate Judiciary Committee report noted this amendment "provide[d] that if a complaint has been filed for divorce, . . . and either party dies prior to the entry of a final judgment, . . . the court would be authorized to proceed with awarding an equitable distribution of the couples' property." S. Jud. Comm. Rep. on A.B. 2351 (June 17, 2023). The Assembly Judiciary Committee Report added that "[u]nder current law, if a spouse or partner dies while the divorce or

dissolution is pending, the survivor is excluded from equitable distribution." Assembly Jud. Comm. Rep. on A.B. 2351 (June 19, 2023).

Further, N.J.S.A. 3B:3-14 "governs the [automatic] revocation of probate and non-probate transfers by divorce." Matter of Est. of Jones, 259 N.J. 584, 596-97 (2025). As relevant here, the statute provides:

> a. Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:
>
> (1) revokes any revocable:
>
> (a) dispositions or appointment of property made by a divorced individual to his former spouse . . . .
>
>     . . . .
>
> (c) nomination in a governing instrument of a divorced individual's former spouse . . . to serve in any fiduciary or representative capacity.
>
> [N.J.S.A. 3B:3-14(a)(1)(a).]

Against these principles, we affirm the court's decision that subsection (h)(2) does not preclude the personal representative of a decedent's estate to seek equitable distribution and reject Jared's argument that subsection (h)(2) only applies to surviving spouses. The statute's plain language expressly provides a

17

court may grant equitable distribution for either party to the matrimonial litigation, consistent with our Supreme Court's holdings in <u>Carr</u> and <u>Kay</u>. We determine nothing in the legislative materials identified by Jared neither expressly overrule <u>Kay</u> nor support his argument that an estate cannot seek equitable distribution under the statute. <u>See</u> <u>Comm. of Petitioners for Repeal of Ordinance No. 522 (2013) of Borough of W. Wildwood v. Frederick</u>, 435 N.J. Super. 552, 567 (App. Div. 2014) (quoting <u>David v. Gov't Emps. Ins. Co.</u>, 360 N.J. Super. 127, 143 (App. Div. 2003)) ("'[t]he Legislature is presumed to know the law'"). Further, under Jared's interpretation, an estate would have no remedy to seek equitable distribution to which it would otherwise be entitled under these circumstances.

We also reject Jared's argument that the court's decision creates "a free-floating property right." Rather, we are satisfied this statute, in fact, does not change how matrimonial litigation under these circumstances would proceed and, at a minimum, merely codifies the already pre-existing right afforded to a surviving spouse or estate to seek a constructive trust of the marital property under the narrow circumstances outlined in <u>Carr</u> and <u>Kay</u>. We also reject Jared's assertion that N.J.S.A. 3B:3-14 provides for the automatic revocation of a probate transfer only by a divorce or annulment in light of that statute's plain

language that expressly allows court orders, among other exceptions, to prevent revocation. See Jones, 259 N.J. at 601 (preventing automatic revocation of a probate transfer pursuant to the express terms of a governing instrument).

In sum, we affirm the court's interpretation of subsection (h)(2) that an estate acting on behalf of a decedent can seek equitable distribution under the statute, in light of its plain language and our Supreme Court's holdings in Carr and Kay. We reject Jared's argument that subsection (h)(2) only permits surviving spouses to seek equitable distribution and are satisfied nothing in the statute's legislative history supports a different outcome.

B.

A fiduciary, acting as executor, has broad statutory powers to administer the estate "in the exercise of good faith and reasonable discretion . . . ." N.J.S.A. 3B:14-23. A fiduciary may be removed for cause, pursuant to N.J.S.A. 3B:14-21, when:

> a. After due notice of an order or judgment of the court so directing, neglects or refuses, within the time fixed by the court, to file an inventory, render an account, or give security or additional security;
>
> b. After due notice of any other order or judgment of the court made under its proper authority, neglects or refuses to perform or obey the order or judgment within the time fixed by the court;

A-1493-25

c.  Embezzles, wastes, or misapplies any part of the estate for which the fiduciary is responsible, or abuses the trust and confidence reposed in the fiduciary;

d.  No longer resides nor has an office in the State and neglects or refuses to proceed with the administration of the estate and perform the duties required;

e.  Is incapacitated for the transaction of business; or

f.  Neglects or refuses, as one of two or more fiduciaries, to perform the required duties or to join with the other fiduciary or fiduciaries in the administration of the estate for which they are responsible whereby the proper administration and settlement of the estate is or may be hindered or prevented.

Courts should be "reluctant to remove an executor as trustee without clear and definite proof of fraud, gross carelessness or indifference."  In re Estate of Hazeltine, 119 N.J. Eq. 308, 314 (Prerog. Ct.), aff'd, 121 N.J. Eq. 49 (E. & A. 1936).  An executor should be removed when his or her conduct shows bad faith, or jeopardizes the value of the estate's assets.  Bramen v. Cent. Hanover Bank & Trust Co., 138 N.J. Eq. 165, 197 (Ch. 1946).

A conflict of interest between an executor and beneficiaries of the estate can be a basis for removal.  In re Koretzky's Est., 8 N.J. 506, 528 (1951); In re Kolbeck, 27 N.J. Super. 135, 137 (App. Div. 1953).  Our courts have permitted appointment of someone other than an heir to be administrator or executor of a

will when the interests of the surviving spouse are in conflict with the best interests of others entitled to distribution of the estate. Di Bella, 372 N.J. Super. at 352-53; see also In re Estate of Messler, 16 N.J. Misc. 434, 434-37 (Orph. Ct. 1938) (disqualifying decedent's widow as administrator in light of her "antagonism" toward decedent's adult child from a previous marriage).

In Di Bella, the court concluded the husband could not serve as administrator to the deceased wife's estate and appointed her son from a prior marriage as administrator. Di Bella, 372 N.J. Super. at 351. Because the wife, who had died intestate, had initiated divorce proceedings a few months before her untimely death, the court found the husband had a "toxic conflict of interest" that prevented him from serving as administrator under the circumstances. Ibid. Specifically, the court concluded that appointment of the husband as administrator would create untenable conflicts including whether "he [would] sit at [p]laintiff's counsel table as [a]dministrator or defense table in his personal capacity" and "how [would] he as [a]dministrator approve the resolution of a claim against himself." Id. at 353.

When an executor is, in fact, removed, N.J.S.A. 3B:10-15 provides that "the vacancy so created shall . . . be filled by the appointment of a fit person to exercise the vacated office." See also N.J.S.A. 3B:10-17 (entitled "Manner in

21

which [substituted] appointment shall be made"). To this end, pursuant to N.J.S.A. 3B:3-33.1(a), "[t]he court's primary goal in interpreting a [will] is to fulfill the [testator's] intent[,]" In re Tr. of Nelson, 454 N.J. Super. 151, 158 (App. Div. 2018), and a "preponderance-of-the-evidence standard of proof applies to interpretation." Id. at 160. "[T]he goal always is the ascertainment of the testator's intent, and it is not to be thwarted by unduly stressing 'the literal meaning' of his words." Id. at 158 (alteration in original) (quoting Fidelity Union Trs. Co. v. Robert, 36 N.J. 561, 565 (1962)).

We discern no error in the court's conclusion that Jared should be removed as executor of the estate with respect to any equitable distribution disputes. In light of his obligations as executor including representing the estate in the matrimonial litigation, a matter in which the estate can seek equitable distribution while he is the opposing party, we are satisfied the court correctly concluded he has a conflict of interest with respect to that issue. Like the surviving spouse in Di Bella, Jared's responsibilities to represent the estate's interests and his own personal interests are directly adverse, or at a minimum, there is a significant risk that his responsibilities to the estate will be materially limited. 372 N.J. Super. at 352-53; see also In re Kish's Est., 52 N.J. 454, 467 (1968) ("[f]iducaries . . . are under an obligation to carry out the direction of the

22

testator or settlor"). We emphasize, however, that he has not been removed from his role as executor entirely and note the court's decision narrowly disqualified him only in the limited capacity to the extent the estate can seek equitable distribution in the matrimonial ligation.

We reject Jared's arguments challenging the court's finding that he has an unwaivable conflict of interest with respect to equitable distribution issues for two independent reasons. First, as discussed, we disagree with his primary contention that subsection (h)(2) only permits the surviving spouse to pursue equitable distribution. Second, here, whether the estate intends to seek equitable distribution is not a hypothetical concern. Indeed, as Jared acknowledged in his application for summary judgment, Kostro filed a caveat and complaint regarding her intention to seek equitable distribution on behalf of the estate.

We are also convinced, however, that the court's failure to properly appoint a substitute executor to represent the estate's interests in the pending equitable distribution action undermines the purpose of subsection (h)(2) and risks prejudice to the estate and its beneficiaries. Accordingly, we remand to the Probate Part as the appropriate forum with direction for it to appoint a substitute executor for the limited purpose of representing the estate in all matters relating to equitable distribution. We instruct the court to appoint the

23

substitute executor pursuant to the requirements of N.J.S.A. 3B:10-15, and with the understanding, which neither party disputes, that the will expressly provided for Kostro to assume the position should she qualify.

C.

When an asset accrues after the end-date of the marital estate, the trial court must evaluate whether the asset should be included in equitable distribution. Brandenburg v. Brandenburg, 83 N.J. 198, 210 (1980). In the evaluation process, the trial court must decide "whether the nature of the asset is one that is the result of efforts put forth 'during the marriage' by the spouses jointly, making it subject to equitable distribution." Pascale v. Pascale, 140 N.J. 583, 609 (1995). "'[A]ssets acquired after that enterprise or partnership no longer exists should not be so included' in the marital estate." Robertson v. Robertson, 381 N.J. Super. 199, 204 (App. Div. 2005) (quoting Portner v. Portner, 93 N.J. 215, 219 (1983)). The party challenging the inclusion of an asset in the marital estate bears "'the burden of establishing such immunity [from equitable distribution] as to any particular asset.'" Pascale, 140 N.J. at 609 (quoting Landwehr v. Landwehr, 111 N.J. 491, 504 (1988)).

Non-probate assets such as life insurance and pension proceeds, however, pass by operation of contract and property law outside of a decedent's estate.

A-1493-25

Fitzgerald v. Linnus, 336 N.J. Super. 458, 472-73 (App. Div. 2001); see also Metro. Life Ins. Co. v. Woolf, 138 N.J. Eq. 450, 454-55 (E. & A. 1946). The designation of a life insurance beneficiary is also considered a non-probate transfer. See Hadfield v. Prudential Ins. Co., 408 N.J. Super. 48, 51 (App. Div. 2009).

Further, the general rule of law is that the beneficiary of a life insurance policy can only be changed by a writing, and in the manner prescribed by the policy. DeCeglia v. Estate of Colletti, 265 N.J. Super. 128 (App. Div. 1993). The rule is tempered by the doctrine of substantial compliance; so, our courts will effectuate a change of beneficiary where the insured has substantially complied with the relevant policy provisions. Haynes v. Metro. Life Ins. Co., 166 N.J. Super. 308, 313 (App. Div. 1979).

In Vasconi, the Supreme Court created an additional narrow exception to this rule. Vasconi v. Guardian Life Ins. Co. of Am., 124 N.J. 338, 340 (1991). In that case, the divorcing spouse waived, in a property settlement agreement, any interest in the other's estate in the case of death, but the insured neglected to remove the divorced spouse as a beneficiary before the insured's death. Id. at 340. The Vasconi court, however, credited the "probable intent of the decedent," and accordingly required a divorced spouse to rebut a presumption that she was

not an intended beneficiary. Id. at 349. The Legislature would later codify precisely such a rule in N.J.S.A. 3B:3-14, providing that divorce, subject to certain exceptions, automatically revokes the divorcing individual's prior insurance designation in favor of the former spouse. See Fox v. Lincoln Fin. Grp., 439 N.J. Super. 380, 388-90 (App. Div. 2015).

The determination of whether a case is properly before the Family Part is governed by Rule 5:1-2, which states that "[a]ll civil actions in which the principal claim is unique to and arises out of a family or family relationship shall be brought in the Family Part." R. 5:1-2(a); see also R. 4:3-1(a)(3). "Our Supreme Court has stated that deference is to be given to the special expertise developed by Family Part judges in dealing with family or family-type matters." New Jersey Div. of Youth & Fam. Servs. v. M.W., 398 N.J. Super. 266, 287 (App. Div. 2007) (citing Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)).

"While the Law Division/Probate Part has full authority to hear and determine controversies over wills, trusts, and estates, it was not the intent of the Legislature to permit that court to encroach upon the general jurisdiction of the . . . Family Part given to it by the [New Jersey] Constitution." D'Angelo v. D'Angelo, 208 N.J. Super. 729, 732 (Ch. Div. 1986). To this end, probate actions arising out of family relationships or family-type relationships have been

previously held cognizable in the Family Part. In re Est. of Roccamonte, 174 N.J. 381, 398-99 (2002); Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 159 (App. Div. 2002); D'Angelo, 208 N.J. Super. at 732; Berlin v. Berlin, 200 N.J. Super. 275, 278-79 (Ch. Div. 1984).

We are satisfied the court correctly referred any issues with respect to the life insurance policy to the Family Part, pending the court's appointment of a substitute executor. In light of our decision about the estate's right to seek equitable distribution under subsection (h)(2), we are convinced the Family Part, relying on its expertise and a more fulsome record, is the correct venue to also consider arguments regarding the life insurance proceeds for the swift and efficient resolution of the matter and conclude there is no principled reason that dictates a different outcome. We emphasize, however, the general contract principles governing the distribution of life insurance proceeds and that Jared is, indeed, the named beneficiary to the policy, a fact neither party disputes.

Further, we recognize that while the record before us does not indicate to what extent the divorce proceedings progressed, neither party has suggested that the divorce was finalized, much less that a settlement agreement even exists, sufficient to warrant automatic revocation and removing Jared as the named beneficiary, pursuant to N.J.S.A. 3B:3-14 or Vasconi. Accordingly, after the

27

Probate Part appoints a substitute executor, we direct the Family Part to promptly enter findings with respect to the distribution of the life insurance proceeds and whether removal of Jared as the beneficiary is appropriate, pursuant to N.J.S.A. 3B:3-14, or any other relevant exception recognized in our case law.

To the extent we have not specifically addressed any of the parties' remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

28

A-1493-25